**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
07/18/2018

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 17-36103 |
| **FM FORREST, INC.,** | § | |
| | § | **Chapter 7** |
| Debtor. | § | |
| | § | |
| | § | |

| | | |
|---|---|---|
| | § | |
| **GRUPPO FORMSTAR LLC,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | **Adversary No. 17-03452** |
| v. | § | |
| | § | |
| **FM FORREST, INC. and FRED F.** | § | |
| **MORGAN,** | § | |
| | § | |
| Defendants. | § | |
| | § | |

<u>**MEMORANDUM OPINION ON FRED F. MORGAN'S MOTION FOR RELIEF FROM**</u>
<u>**FINAL SUMMARY JUDGMENT AND RELATED ENFORCEMENT ORDERS**</u>
**[This Order Relates to Adv. Doc. No. 43]**

## I.   INTRODUCTION

The dispute at bar is governed by Federal Rule of Civil Procedure 60(b) for which there

is voluminous case law; hence, this Court would not ordinarily issue a Memorandum Opinion

involving this rule.  However, the dispute at bar involves a Rule 60(b) motion filed in a lawsuit

removed from state court, and there is split case law as to whether the *Rooker-Feldman* doctrine

applies in such a situation; if it does, it would deprive this Court of subject matter jurisdiction

over the motion.  Further, even if this Court does have jurisdiction, a question has arisen as to

whether, based upon rulings issued by the state court prior to removal, the law of the case

1

doctrine applies, thereby requiring this Court to adhere to the orders of the state court.  Given these points of law, the Court has decided to issue this Memorandum Opinion.

This adversary proceeding involves three parties: (1) a private lender, Gruppo Formstar LLC (the "Plaintiff"); (2) a privately-held company, FM Forrest, Inc.—the debtor in the main Chapter 7 case (the "Debtor"); and (3) the Debtor's sole shareholder, Fred F. Morgan ("Morgan").  Prior to the filing of the Debtor's Chapter 7 petition, the Plaintiff filed suit against the Debtor and Morgan (collectively, the "Defendants") in state court to enforce the terms of a promissory note executed by the Debtor and a guaranty executed by Morgan.  The Plaintiff eventually obtained a judgment against the Defendants, and thereafter obtained orders from the state court in order to collect the judgment, including an order appointing a receiver and requiring turnover of assets, and an order sanctioning the Defendants for failure to comply with post-judgment discovery.  The Defendants requested the state court to vacate the judgment and associated orders, but the state court, after holding an evidentiary hearing, denied their requested relief.  Soon thereafter, the Plaintiff filed a motion for contempt.  A few weeks later, the Debtor filed a voluntary Chapter 7 petition; and on the eve of the contempt hearing in state court, Morgan—who was not protected by the automatic stay and therefore required to defend himself at this contempt hearing—removed the state court suit to federal court, thereby stopping the state court from holding the hearing.  [Adv. Doc. No. 1].  Following the removal and transfer of the lawsuit to this Court, Morgan filed a pleading entitled "Fred F. Morgan's Motion For Relief From Final Summary Judgment and Related Enforcement Orders" (the "Motion").  [Adv. Doc. No. 43].  The Motion requests this Court to set aside the judgment issued by the state court as well as the related enforcement orders.  Not surprisingly, the Plaintiff filed a response opposing the Motion.  [Adv. Doc. No. 64].

On June 4, 2018, this Court held a hearing on the Motion (the "Hearing").  The parties introduced exhibits and adduced testimony from three witnesses, the Court heard closing arguments, and then took the matter under advisement.  The parties then filed post-hearing briefs.  Having now considered all of the evidence and the legal arguments made by the parties, the Court now issues this Memorandum Opinion explaining why it will deny the Motion.  Set forth below are this Court's findings of fact and conclusions of law, which this Court makes pursuant to Bankruptcy Rule 7052.  To the extent that any finding of fact is construed as a conclusion of law, it is adopted as such; and to the extent that any conclusion of law is construed as a finding of fact, it is adopted as such.  The Court reserves the right to make additional findings and conclusions as it deems appropriate or as any party may request.

## II.    FINDINGS OF FACT

1.    Morgan is a developer of multi-family apartments.  [Defs.' Ex. 16].  He is 82 years old and is a seasoned and sophisticated businessman who has been a party to previous lawsuits.  [*Id.*; Adv. Doc. No. 72, June 4, 2018, Tr. 51:3-4, 61:1-5, 101:19-23].

2.    Morgan is the 100% shareholder and president of the Debtor.  [Main Case Doc. No. 1, at 32 of 35; Adv. Doc. No. 72, June 4, 2018, Tr. 51:7-12].

3.    In 2015, Morgan, as president and sole shareholder of the Debtor, decided to build an apartment complex in Ingleside, Texas.  [Adv. Doc. No. 43, at 3 of 7, ¶ 7].  The Plaintiff extended financing of $750,000.00 to the Debtor in conjunction with this project.  [Adv. Doc. No. 72, June 4, 2018, Tr. 53:12-21, 54:19-22].  The Debtor signed a promissory note evidencing this loan, and Morgan himself signed a personal guaranty that guaranteed repayment of this loan. [Pl.'s Ex. E].  Additionally, the terms of this $750,000.00 loan were documented in a lengthy and detailed loan agreement and two security agreements.  [*Id.*].

3

4.      Subsequently, the Debtor defaulted under the note, and Morgan failed to pay pursuant to the guaranty.[1]  [Pl.'s Ex. E, at 3 of 76, ¶¶ 8–10, at 9 of 76, ¶¶ 8–12].

5.      On October 27, 2016, the Plaintiff filed a lawsuit against the Defendants in the District Court of Dallas County, Texas (the "State Court").  [Pl.'s Ex. A].  Specifically, the Plaintiff filed its Original Petition and Request for Disclosure (the "Petition").  [*Id.*].  The Petition was served upon both Defendants at 4801 Woodway Drive, Suite 306W, Houston, Texas 77056.  [Pl.'s Ex. B].  The district clerk assigned this lawsuit Cause No. DC-16-13975, and it was styled as *Gruppo Formstar, LLC, A Texas Limited Liability Company v. F M Forrest, Inc., A Texas Corporation, and Fred F. Morgan, An Individual* (the "State Court Suit").  [Pl.'s Ex. A].

6.      The Petition attached the loan documents that form the basis of the lawsuit and these documents—the loan agreement, promissory note, security agreements, and guaranty agreement—each state the address for both Defendants as 4801 Woodway Drive, Suite 306W, Houston, Texas 77056.  [Adv. Doc. No. 1-1, at 2–71 of 71].

7.      On November 28, 2016, the Defendants filed their Original Answer to Plaintiff's Original Petition (the "Answer").  [Pl.'s Ex. D].  The Defendants filed no affirmative defenses or counter-claims; they simply filed a general denial.  [*Id.*].

8.      The attorney who filed the Answer on behalf of the Defendants was Jacqueline M. Houlette ("Houlette").  [*Id.*].  Since 2009, Houlette had represented Morgan and entities in which he had an interest in various lawsuits.  [Adv. Doc. No. 72, June 4, 2018, Tr. 61:1-5, 101:19-23].

---

[1] Morgan alleges that the Debtor defaulted because, among other reasons, the Plaintiff failed to provide additional financing over and above the $750,000.00 that the Plaintiff actually lent.  [Adv. Doc. No. 72, June 4, 2018, Tr. 52:21–53:21, 54:23–55:4, 80:1-5].  However, Morgan did not introduce into the record any written documentation from the Plaintiff—either a loan agreement or a commitment letter or even an email—evidencing any such additional promises of further financing from the Plaintiff.  The Court does not believe Morgan on this point and finds that the Plaintiff never gave any such additional financing commitment.

9.      On December 19, 2016, counsel for the Plaintiff filed the Plaintiff's Motion for Summary Judgment (the "MSJ"), set the hearing for February 1, 2017, and properly served the MSJ and Notice of Hearing upon counsel of record for the Defendants—i.e., Houlette.  [Pl.'s Exs. E, F, G, and H].

10.      On January 24, 2017, at 11:07 a.m., Houlette wrote an email to counsel of record for the Plaintiff, Cliff Wade ("Wade"), requesting that Wade reset the hearing on the MSJ. Specifically, Houlette's email reads as follows:

> I write to respectfully request you re-set your MSJ for no earlier than February 15, 2016 [sic].[2]  I have been helping care for a friend in a home hospice situation since before Christmas and he passed away last week. In addition, Fred [i.e. Morgan] has been out of the office battling pneumonia the last couple of weeks.  I appreciate your professional courtesy in this matter and hope to get you a settlement offer before responding to the MSJ.

[Ex. No. 1 attached to Pl.'s Ex. I].

11.      In response to Houlette's request for a continuance, Wade, at 4:09 p.m. on January 24, 2017, responded as follows:

> Jackie, I have flown to Midland and back today for a hearing and am catching up on email.  I am reaching out to my client for discussion as I believe that the extension requires his consideration.  Until I respond to you, please assume that we are proceeding under the current setting.

[*Id.*]

12.      In reply to Wade's response, Houlette, at 4:29 p.m. on January 24, 2017, wrote the following email to Wade:

> Thanks for getting back to me.  I appreciate your professional courtesy in this matter.  Please let me know if your client refuses my request notwithstanding my reasons for requesting it so I can mark you guys as opposed.  I will commit to getting you a settlement offer before a hearing should you agree to move it, and perhaps even before my response is due.

---

[2] Houlette erroneously requested that the MSJ hearing be continued until at least February 15, 2016, when she meant to type February 15, **2017**.

> Safe travels! I hope you get to catch a meal at Wall Street while you are in Midland.

[*Id.*]

13.    The record is unclear as to whether Wade ever affirmatively communicated thereafter to inform Houlette that he had conferred with the Plaintiff and that the Plaintiff expressly instructed him to oppose the request for a continuance.  What is clear is that on January 25, 2017, at 5:51 p.m., Houlette—on behalf of the Defendants—filed Defendants' Verified Motion for Continuance of Hearing on Plaintiff's Motion for Summary Judgment ("Motion for Continuance").  [Pl.'s Ex. I].  The Motion for Continuance expressly set forth the following grounds for the requested continuance:

> Counsel for Defendants has been caring for a close friend in home hospice care for the last month or so.  He passed away last week.  She has focused much of her time and energy on caring for him over the last six weeks and needs additional time to prepare a response to Plaintiff's Motion for Summary Judgment.  In addition, Defendant Fred Morgan, who is also the sole proprietor of Defendant F M Forrest, Inc. has been battling pneumonia the last few weeks and has been unable to assist Ms. Houlette in preparing a response to the limited extent she has been available.

[*Id.*]

14.    Houlette attached her affidavit to the Motion for Continuance.  This affidavit, which was sworn to and subscribed on January 25, 2017, represents the following:

> My name is Jacqueline M. Houlette.  I am over the age of eighteen (18) years, am of sound mind and suffer from no legal disabilities.  I am fully competent to testify to the matters stated herein.  I have personal knowledge of all the facts stated in this affidavit.
>
> I am the lawyer for Defendants F M Forrest, Inc., and Fred Morgan in the above-referenced matter.
>
> I have reviewed Defendant's Verified Motion for Continuance of Hearing on Summary Judgment to which this affidavit is attached and the statements and facts contained therein are within my personal knowledge and are true and correct.

[Pl.'s Ex. J].

15.     On January 27, 2017, the State Court, in reliance on Houlette's affidavit, granted the Motion for Continuance.  [Pl.'s Ex. K].

16.     The MSJ was rescheduled for March 7, 2017, and on January 31, 2017, at 8:21 a.m., the Plaintiff's counsel of record (i.e., Wade) properly served Defendants' counsel of record (i.e., Houlette) with the Notice of Continued Hearing.  [Pl.'s Exs. L and M].  There is no question that Houlette was aware that the rescheduled hearing on the MSJ was to occur on March 7, 2017, at 9:30 a.m.  [Pl.'s Ex. M].  Indeed, Exhibit M—which is from the ProDoc eFiling system used in the State Court—reflects that Houlette opened the Notice of Continued Hearing that Wade had served via ProDoc eFiling.  [*Id.*; Adv. Doc. No. 72, June 4, 2018, Tr. 117:16-22].

17.     The State Court did in fact hold the hearing on the MSJ on March 7, 2017.  [Adv. Doc. No. 72, June 4, 2018, Tr. 57:2-4].  Wade, counsel for the Plaintiff appeared at this hearing. However, Houlette, counsel of record for the Defendants, did not appear at this hearing.  [Adv. Doc. No. 72, June 4, 2018, Tr. 103:13-15].  Nor did either of the Defendants appear at this hearing, as Houlette had not made them aware of the hearing.  [Adv. Doc. No. 72, June 4, 2018, Tr. 57:2-4, 103:4-23].  Moreover, Houlette, on behalf of the Defendants, filed no written response opposing the MSJ.  [Adv. Doc. No. 72, June 4, 2018, Tr. 102:23-25, 103:16-17, 105:5-7].  Under these circumstances, the State Court granted the MSJ and on March 8, 2017, entered a judgment entitled "Final Summary Judgment" against the Defendants (the "Judgment").  [Pl.'s Ex. N].  The last paragraph of the Judgment expressly sets forth that: "All other relief requested and not expressly granted herein is hereby denied. This judgment finally disposes of all parties and all claims and is appealable."  [*Id.*].

18.     On March 23, 2017, Wade, as counsel for the Plaintiff, sent a letter <u>directly</u> to each of the Defendants <u>by certified mail and by regular first class mail</u> that alerted them of the Judgment, attached it to the letter, demanded payment of the Judgment, and served the Plaintiff's post-judgment written discovery requests (the "<u>March Letter</u>").  [Pl.'s Ex. O].  Wade also sent the March Letter to Houlette via email.  [*Id.*].

19.     The March Letter was sent to the address of 4801 Woodway Drive, Suite 306W, Houston, Texas 77056, as this is the address for Defendants stated in the above referenced loan documents and the address where Defendants were each served with process for the State Court Suit.  [*Id.*].  Houlette received the March Letter, but did not discuss this letter, or the contents therein, with Morgan.  [*See* Adv. Doc. No. 72, June 4, 2018, Tr. 103:21–104:4].

20.     On March 25, 2017, the March Letter, sent by <u>certified mail</u>, was signed for and accepted on behalf of the Defendants by an employee of the Debtor, Gracie Dismukes ("<u>Dismukes</u>").  [Pl.'s Ex. P].  Dismukes was an employee of the Debtor for over 20 years, and her duties included picking up the mail.  [Adv. Doc. No. 72, June 4, 2017, Tr. 91:2-16].  The March Letter was effective legal notice upon mailing pursuant to Rule 21a of the Texas Rules of Civil Procedure.[3]

---

[3] Rule 21a(a)(2) of the Texas Rules of Civil Procedure provides that: "A document not filed electronically may be served in person, by mail, by commercial delivery service, by fax, by email, or by such other manner as the court in its discretion may direct." Rule 21a(b)(1) of the Texas Rules of Civil Procedure provides that: "Service by mail or commercial delivery service shall be complete upon deposit of the document, postpaid and properly addressed, in the mail or with a commercial delivery service." Morgan takes the position that Wade did not properly serve him personally with the March Letter. This Court disagrees, as Wade sent the March Letter to Morgan at his business address (i.e., the Debtor's address), and his longtime assistant, Dismukes, signed for the letter. [Pl.'s Ex. P]. This Court finds that these circumstances constitute proper service on Morgan. However, even assuming that Morgan is correct that he himself was not properly served with the March Letter, Wade also served Houlette, i.e., Morgan's counsel of record at the time, and therefore service to Morgan is imputed through service to Houlette. *Buck v. Estate of Buck*, 291 S.W.3d 46, 59–60 (Tex. App.—Corpus Christi–Edinburg 2009, no pet.) (finding that client received notice of hearings because "notice to an attorney, acquired during the existence of the attorney-client relationship, is imputed to the client" (quoting *Allied Res. Corp. v. Mo-Vac Serv. Co., Inc.*, 871 S.W.2d 773, 778 (Tex. App.—Corpus Christi–Edinburg 1994, writ denied)).

21.     The Defendants did not timely file a motion for new trial or appeal the Judgment despite having notice of the Judgment, [Adv. Doc. No. 72, June 4, 2018, Tr. 105:8-10];[4] the Judgment therefore became final on April 8, 2017.[5] Further, the Defendants also failed to timely respond to the post-judgment discovery requests that were contained in the March Letter.  [*See* Adv. Doc. No. 72, June 4, 2018, Tr. 103:24–104:4; Pl.'s Ex. O].

22.     On April 12, 2017, Houlette entered into an Agreed Judgment of Fully Probated Suspensions with the Commission for Lawyer Discipline.  [Adv. Doc. No. 43-5, at 6–11 of 18]. The findings of fact in this Agreed Judgment set forth, *inter alia*, that Houlette failed to keep a client's funds in a separate trust account and further failed to promptly deliver these funds to the client's medical provider.  There is no mention whatsoever in this Agreed Judgment of any mental incapacity from which Houlette was suffering.  Nor is there any mention in this Agreed Judgment of the time period in which Houlette failed to keep this particular client's funds in a separate trust account and further failed to deliver these funds to this client's medical provider.

---

[4] *Lenham v. Oetting*, No. 12-13-00392-CV, 2014 WL 259805, at *1 (Tex. App.—Tyler Jan. 22, 2014) ("Under the rules of appellate procedure, the notice of appeal must be filed within thirty days after the judgment is signed . . . . To be timely, a motion for new trial must be filed within thirty days after the judgment is signed.") (citing Tex. R. App. P. 26.1; Tex. R. Civ. P. 329b(a)).

[5] Because the Defendants did not request the State Court to vacate the Judgment, and because they also did not appeal the Judgment, the Judgment became final.  *See, e.g.*, *Hill v. Hill*, 460 S.W.3d 751, 760 (Tex. App.—Dallas 2015, pet. denied) (noting that because order dismissing the case was not appealed it became a final order); *Ramirez v. Archie*, No. 08-02-00265, 2004 WL 1284013, at *2 (Tex. App.—El Paso June 10, 2004, no pet.) ("Since Appellees did not appeal the October 11 judgment within ten days after it was rendered, it became final on Monday, October 22, 2001.").  The Court notes that the Judgment is entitled "Final Summary Judgment" and that the last paragraph expressly sets forth that "[a]ll other relief requested and not expressly granted herein is hereby denied. This judgment finally disposes of all parties and all claims and is appealable."  [Finding of Fact No. 17].  This language underscores that the Judgment is a final judgment under Texas law.  *See Burciaga v. Deutsche Bank Nat'l Trust Co.*, 871 F.3d 380, 385 (5th Cir. 2017) ("To be final a judgment must determine the rights of the parties and dispose of all the issues involved so that no future action by the court will be necessary in order to settle and determine the entire controversy.") (quoting *Wagner v. Warnasch*, 295 S.W.2d 890, 892 (Tex. 1956)); *Houston Health Clubs, Inc. v. First Court of Appeals*, 722 S.W.2d 692, 693 (Tex. 1986) (emphasis supplied) ("When a judgment . . . is rendered and entered in a case regularly set for a conventional trial on the merits, . . . it will be presumed for appeal purposes that the court intended, and did, dispose of all parties legally before it and of all issues made by the pleadings between such parties . . . **Of course, the problem can be eliminated entirely by . . . a simple statement that all relief not expressly granted is denied.**") (quoting *Ne. Indep. Sch. Dist. v. Aldridge,* 400 S.W.2d 893, 898 (Tex.1966)).

Further, Houlette did not lose the right to practice law as a result of this Agreed Judgment; indeed, she continued to practice law. [Adv. Doc. No. 72, June 4, 2018, Tr. 109:17–111:17]. Houlette did not inform Morgan that she had entered into this Agreed Judgment. [Adv. Doc. No. 72, June 4, 2018, Tr. 67:18–66:9].

23. In April and early May of 2017, Wade (as counsel of record for the Plaintiff), and Houlette (as counsel of record for the Defendants) communicated directly by telephone and email to discuss the possibility of settlement between the Plaintiff and the Defendants. [Adv. Doc. No. 72, June 4, 2018, Tr. 111:6-14]. Morgan was well aware that Houlette was conducting settlement negotiations with Wade. [Adv. Doc. No. 72, June 4, 2018, Tr. 67:13-17, 88:19-25, 92:8-12, 94:4-17, 99:3-15, 107:10–108:13]. Morgan claims that while he was aware that Houlette was conducting settlement negotiations, he was unaware that the State Court had already issued entered the Judgment. [Adv. Doc. No. 72, June 4, 2018, Tr. 57:5-7, 89:9-12, 94:15-17, 98:23–99:15].

24. On May 4, 2017, at 1:42 p.m., Houlette (on behalf of the Defendants) sent an email to both Wade (counsel of record for the Plaintiff) and the Plaintiff's representative (an individual named Renaud) expressly setting forth the following: "Attached are documents to assist you in your consideration of Fred's [Morgan's] settlement proposal." [Pl.'s Ex. Q]. Attached to this email were the monthly operating synopsis and variance report of the Oak Forest Apartments and the 2016 income and expense report of the Caracole Apartments—both of which Morgan has an interest in. [Id.]. Morgan provided this financial information to Houlette with the knowledge that she would be sending this information to the Plaintiff's counsel, i.e., Wade, in order to attempt to convince the Plaintiff that Morgan had sources of cash flow that he could

use to make payments over time to the Plaintiff as part of any settlement.  [Adv. Doc. No. 72, June 4, 2018, Tr. 92:8-12, 93:19–94:17].

25.    At 12:01 p.m. on May 8, 2017, Houlette sent an email to Wade which reads as follows:

> Sorry for not responding sooner, I was in mediation Friday, Attached below are the documents I sent Thursday.  I screwed up your e-mail address which is why you did not get it.  As you can see it was not a formal offer, but documents for discussion.  I am working on an offer and had hoped to talk to Fred [Morgan] before sending it, but he is not up to talking today.  Regardless of how he feels tomorrow, I will get you the offer letter tomorrow, and will get you the back-up documents for the settlement requested by the end of the week.
>
> I will call you tomorrow when I send the offer letter and we can talk about other pending issues.

[Pl.'s Ex. Q].

26.    These emails from Houlette, together with the financial information about Morgan's companies, indicate that the Defendants, through their attorney, were attempting at this point in time to achieve settlement by offering to pay out the Judgment over time.  [*Id.*].

27.    Despite the efforts to achieve settlement, the Plaintiff and the Defendants were unsuccessful.

28.    After settlement discussions failed, the Plaintiff proceeded to file the following post-judgment pleadings:

A. **Motion to Compel**. On May 17, 2017, the Plaintiff filed its Motion to Compel and for Sanctions (the "Motion to Compel") related to the post-judgment discovery and served the motion and corresponding notice of a June 16, 2017, hearing upon Defendants' counsel of record (i.e., Houlette).  [Pl.'s Exs. S, T, U, and V].  The State Court held a hearing on June 16, 2017, and granted the Motion to Compel and for Sanctions and, therefore, entered on that same day the Order

Granting Motion to Compel and for Sanctions (the "Compel Order"). [Pl.'s Ex. BB]. Houlette failed to appear at this hearing. [Adv. Doc. No. 72, June 4, 2018, Tr. 104:12-13]. The Compel Order required the Defendants to respond and produce documents responsive to the Plaintiffs first set of post-judgment interrogatories and first post-judgment request for production within ten days. [Pl.'s Ex. BB]. Further, the Compel Order required that the Defendants pay Plaintiff its attorneys' fees of $750.00 for the preparation and arguing of the Motion to Compel. [*Id.*].

B. **Receivership Application**. On May 31, 2017, the Plaintiff filed its Post-Judgment Application for Turnover Relief and Appointment of Receiver (the "Receivership Application") and served the motion and corresponding notice of a June 9, 2017, hearing upon Defendants' counsel of record—i.e., Houlette. [Pl.'s Exs. W, X, Y, and Z]. The State Court held a hearing on June 9, 2017, and granted the Application for Turnover and Appointment of Receiver. The Order Granting Plaintiff's Post-Judgment Applications for Turnover Relief and Appointment of Receiver (the "Receivership Order") was entered at the conclusion of the hearing. [Pl.'s Ex. AA]. Houlette failed to appear at this hearing. [Adv. Doc. No. 72, June 4, 2018, Tr. 104:24-25]. Further, the Receivership Order appointed James Mattison as the receiver (the "Receiver") with the power and authority to take possession of and sell all leviable property of the Defendants. [Pl.'s Ex. AA]. The Receivership Order also empowered the Receiver to take numerous steps to collect the Judgment, including taking possession and control of the Debtor's assets and Morgan's assets. [*Id.*].

29.     Morgan claims that it was not until June 20, 2017, that he became aware of the following:

    A.  The Plaintiff's filing of the MSJ;

    B.  Houlette's failure to file a response to the MSJ;

    C.  Houlette's failure to file a motion for continuance of the hearing held on March 8, 2017, regarding the MSJ;

    D.  The State Court's granting of the MSJ and its entering the Judgment on its docket;

    E.  The Plaintiff's sending written post-judgment discovery to Houlette;

    F.  The Plaintiff's filing of the Motion to Compel;

    G.  The Plaintiff's filing of the Receivership Application;

    H.  The State Court's entry of the Compel Order; and

    I.  The State Court's entry of the Receivership Order.

[Adv. Doc. No. 43, at 5 of 12, ¶ 11; Adv. Doc. No. 72, June 4, 2018, Tr. 56:9–59:8].[6]

30.     On July 6 and 7, 2017, over 110 days after being served with a copy of the Judgment and post-judgment discovery, the Defendants filed their (1) Emergency Motion to Dissolve Appointment of Receiver and Turnover Order; and (2) Emergency Motion to Vacate Order Granting Motion to Compel.  [Pl.'s Exs. CC and FF].  On July 11, 2017, the Defendants

---

[6] At the Hearing, Houlette testified that she did not inform Morgan about the filing of the MSJ, the Motion to Compel, or the Receivership Application.  [Adv. Doc. No. 72, June 4, 2018, Tr. 103:13–105:7].  Based upon Morgan's testimony and Houlette's testimony, and the Court's assessment of the credibility of each of these witnesses, the Court finds that Houlette did not make any disclosure to Morgan about these pleadings, the hearings on these pleadings, or the fact that the State Court issued the Judgment, the Compel Order, and the Receivership Order.  [*Id.*].  However, the Court has some doubts about Morgan's testimony that it was not until June 20, 2017, that he became aware of the Judgment.  There is no question that on March 25, 2017, Dismukes, a longstanding employee of the Debtor, signed the green card acknowledging receipt of the March Letter (which enclosed a copy of the Judgment) that Plaintiff's counsel had sent out on March 23, 2017.  [Finding of Fact No. 18].  This Court has a hard time believing that Dismukes, upon receipt of the March Letter, did not give this letter to Morgan on or near to the time that she signed the green card.  Dismukes, by all accounts, was a very diligent employee of the Debtor, and it seems unlikely that she would not have immediately taken steps to ensure that she delivered the March Letter to Morgan.  The Court notes that Dismukes did not give any testimony at the Hearing or at the hearing in the State Court on July 14, 2017.

filed a pleading entitled "Supplemental Argument in Support of Defendants' Motion to Dissolve Appointment of Receiver and Turnover Order."  [Pl.'s Ex. EE].  Further, on July 13, 2017, the Defendants filed a pleading entitled "Defendants' Reply In Support of Defendants' Emergency Motion to Dissolve Appointment of Receiver and Turnover Order and in Support of Defendants' Emergency Motion to Vacate Order Granting Motion to Compel" (hereinafter all four of these pleadings filed by the Defendants are referred to as the "Two Emergency Motions").  [Pl.'s Ex. HH].  As with the Motion, the Two Emergency Motions argued that the Judgment, Receivership Order, and Compel Order should be vacated and reversed due to the alleged mental incapacity of their counsel (i.e., Houlette), which allegedly caused the Defendants to be denied due process in the State Court Suit.[7]  [*Id.* at 1–3].  The Two Emergency Motions were signed by a new law firm representing the Defendants—Kane Russell Coleman Logan PC (the "KRCL Law Firm").  [*See* Pl.'s Exs. CC and FF].  With the filing of the Two Emergency Motions, the KRCL Law Firm replaced Houlette as counsel of record for the Defendants in the State Court Suit.

---

[7] The prayer paragraph of the Defendants' Emergency Motion to Dissolve Appointment of Receiver and Turnover Order requested that the State Court dissolve the appointment of the receiver and turnover order; it does not expressly request that the Judgment be set aside.  [Pl.'s Ex. CC, at 13 of 14].  The prayer paragraph of the Defendants' Emergency Motion to Vacate Order Granting Motion to Compel requested that the State Court vacate the Compel Order; it also did not expressly request that the Judgment be set aside.  [Pl's Ex. FF, at 4–5 of 5].  However, both prayer paragraphs requested such other and further relief to which they [i.e., the Defendants] are entitled, and such language preserved their argument that the Judgment should be set aside.  [Pl.'s Exs. CC and FF].  Indeed, the pleading entitled "Supplemental Argument in Support of Defendants' Motion to Dissolve Appointment of Receiver and Turnover Order" expressly requested that the State Court "should reverse the final judgment, make Plaintiff reset the Motion for Summary Judgment hearing and start the process again."  [Pl.'s Ex. EE, at 2 of 5].  Thus, there is no question that the Two Emergency Motions sought not only to set aside the Compel Order and the Receivership Order, but also sought to set aside the Judgment.

There is no question that under Texas Rule of Civil Procedure 329b(a), the State Court no longer had plenary power to vacate the Judgment as requested by the Defendants because the Defendants had failed to make the request within 30 days after the entry of the Judgment.  Nevertheless, they made the request and argued this point at the hearing held on July 14, 2017.  [*See* Finding of Fact No. 32].  Even though the State Court no longer had the power to vacate the Judgment, it did so have the power to set aside the Compel Order and the Receivership Order, as the Defendants had timely made such a request under Rule 329b(a).  Thus, as a practical matter, by seeking to set aside these two orders, the Defendants were effectively seeking to stop the Plaintiff from enforcing the Judgment.

31.     On July 10, 2017, the Defendants appealed the Receivership Order to the Dallas Court of Appeals.[8]  [Adv. Doc. No. 72, June 4, 2018, Tr. 69:12–70:18; Pl.'s Ex. JJ].

32.     On July 14, 2017, the State Court held an evidentiary hearing on the Two Emergency Motions.  [*See* Pl.'s Ex. II, which is a transcript of the entire hearing held on July 14, 2017, in State Court; Adv. Doc. No. 72, June 4, 2018, Tr. 98:5-18].  At the close of this hearing, the State Court took the matter under advisement.  [Pl.'s Ex. II, July 14, 2017, Tr. 78:13-15]. The transcript of this hearing reflects, among other things, that:

> A. The Defendants argued that they had failed to receive due process because Houlette had "abandoned" the Defendants in her representation of them by failing to file responses to the MSJ, the Motion to Compel, the Application for Receivership, and by failing to give them notice of the hearings for these pleadings, [Pl.'s Ex. II, July 14, 2017, Tr. 6:8–7:21, 15:3–18:10]; and

> B. The State Court admitted into evidence an affidavit signed and sworn to by Houlette on July 13, 2017, stating that she failed to provide the Defendants notice of any hearings because she was "temporarily incapacitated as a result of some mental issues."  [Pl.'s Ex. II, at 154–55 of 161].

33.     After the hearing held on July 14, 2017, the Defendants requested the State Court to enjoin the Plaintiff's efforts to collect the sums due under the Judgment pending the State Court's ruling on the Two Emergency Motions.  [Pl.'s Ex. KK, at 2 of 8, ¶6].  The State Court granted this request and, accordingly, entered an order staying the Plaintiff's efforts authorized under the Receivership Order to collect the sums due under the Judgment.  [Pl.'s Ex. MM].

34.     On July 31, 2017, the Defendants filed a Bill of Review, the purpose of which was—and still is—to set aside the Judgment (the "Bill of Review").  [Adv. Doc. No. 72, June 4,

---

[8] The Court notes that the Defendants did not appeal the Compel Order.

2018, Tr. 71:3-24; Defs.' Ex. 16].  The Bill of Review is a separate lawsuit filed in the District

Court of Dallas County, Texas, and bears Cause No. DC-17-09193.  [Adv. Doc. No. 72, June 4,

2018, Tr. 71:3-24; Defs.' Ex. 16].  In the Bill of Review, the Defendants assert essentially the

same factual allegations and legal arguments for setting aside the Judgment that they asserted in

the Two Emergency Motions and that they are now asserting in the Motion pending before this

Court.  [*Compare* Defs.' Ex. 16, *with* Adv. Doc. No. 43, *and* Pl.'s Ex. CC, *and* Pl.'s Ex. FF, *and*

Pl.'s Ex. EE, *and* Pl.'s Ex. HH].

35.     On September 14, 2017, the Plaintiff filed its Amended Emergency Application

for Injunctive Relief and Dissolution of Stay of Receiver Collection Efforts (the "<u>Application to

Dissolve the Stay</u>").  [Pl.'s Ex. KK].  Defendants filed a written response again asserting, among

other arguments, that the Plaintiff was not entitled to its requested relief because the Judgment

was void due to the Defendants having failed to receive due process in the State Court Suit.

[Pl.'s Ex. LL, at 1–3 of 11].

36.     On September 20, 2017—i.e., approximately three months after Houlette had

been replaced representing Morgan by the KRCL Law Firm—Houlette entered into another

Agreed Judgment of Fully Probated Suspension with the Commission for Lawyer Discipline.

[Adv. Doc. No. 43-5, at 13–18 of 18].  The findings of fact in this Agreed Judgment set forth,

*inter alia*, that Houlette: (a) "neglected a legal matter" entrusted to her client; (b) "failed to keep

client Ronnie Cartwright reasonably informed about the status of his case[;]" and (c) "failed to

keep client Matthew D. Taylor reasonably informed about the status of his case."  [*Id.*].  There is

no mention whatsoever in this Agreed Judgment of any mental incapacity from which Houlette

was suffering.  [*See id.*].  Nor is there any mention in this Agreed Judgment of the time period in

which Houlette failed to properly inform her clients.  [*See id.*].  Further, Houlette did not lose the

right to practice law as a result of this Agreed Judgment; indeed, she continued to practice law. [Adv. Doc. No. 72, June 4, 2018, Tr. 109:17–111:17].  Houlette did not inform Morgan that she had entered into this Agreed Judgment.  [*See* Adv. Doc. No. 72, June 4, 2018, Tr. 67:24–68:18].

37.    On September 27 and 29, 2017, the State Court—having deliberated since holding the July 14, 2017, hearing—decided to deny the Two Emergency Motions and to grant the Application to Dissolve the Stay.  Specifically, the State Court entered the following orders:

> A.  Order Denying Defendants' Emergency Motion to Vacate Order Granting Motion to Compel, [Pl.'s Ex. NN];
>
> B.  Order Denying Defendant's Emergency Motion to Dissolve Appointment of Receiver and Turnover Order, [Pl.'s Ex. OO]; and
>
> C.  Order Granting Plaintiff's Amended Emergency Application for Injunctive Relief and Dissolution of Stay of Receiver Collection Efforts (the "Injunction Order"), [Pl.'s Ex. MM].[9]

The State Court's entering of these three orders had the effect of denying the Defendants' request to vacate the Judgment and allowing the Plaintiff and the Receiver to proceed to make efforts to collect the Judgment.

38.    On October 12, 2017, the Plaintiff filed separate motions for contempt against each of the Defendants, and the State Court then ordered that the Defendants appear in court on November 6, 2017, to determine whether they should be held in contempt for disobedience of the Receivership Order and the Compel Order.  [*See* Adv. Doc. No. 1-2, at 17, 20 of 28].

39.    On November 2, 2017, the Debtor commenced a Chapter 7 bankruptcy at Case No. 17-36103 and filed a Suggestion of Bankruptcy in the State Court Suit in order to stay those proceedings as to itself.  [Main Case Doc. No. 1; Adv. Doc. No. 1-2, at 25–26 of 28; Adv. Doc.

_____

[9] As with the Compel Order, the Defendants did not did appeal the Injunction Order.

No. 1-3, at 6 of 8]. Morgan, in his capacity as president of the Debtor, signed the bankruptcy petition initiating the Debtor's Chapter 7 case. [Main Case Doc. No. 1]. Although the filing of this bankruptcy petition stayed the Plaintiff's collection actions against the Debtor in the State Court Suit, it did not stay such actions against Morgan, individually. Therefore, the contempt hearing scheduled for November 6, 2017, remained on the State Court's docket as to Morgan.

40.     On November 6, 2017, approximately fifteen minutes before the commencement of the hearing in State Court on contempt proceedings as to Morgan, he removed the State Court Suit and filed his Notice of Filing Notice of Removal in the State Court Suit in order to prevent the State Court from taking any action as to himself. [Adv. Doc. No. 1].

41.     On December 7, 2017, the Plaintiff filed—in this Court—its Emergency Motion for Contempt for Fred F. Morgan's Violation of the Order Granting Motion to Compel, the Receivership Order and Injunction Order (the "Motion for Contempt"). [Adv. Doc. No. 12]. The Motion for Contempt requests this Court to order Morgan to appear and show cause why he should not be held in contempt for failure to comply with the Compel Order and the Receivership Order. [*Id.*].

42.     On December 7, 2017, Morgan filed a response to the Plaintiff's request for an emergency hearing on the Motion for Contempt. [Adv. Doc. No. 13]. Morgan asserted that there was no basis for an emergency hearing. [*Id.*].

43.     On December 8, 2017, the Plaintiff filed its reply to Morgan's response regarding the request for the emergency hearing. [Adv. Doc. No. 14]. This reply reurged the Court to hold a hearing and require Morgan to show cause why he should not be held in contempt. [*Id.*].

44.     On December 14, 2017, Morgan filed a response to the Motion for Contempt. [Adv. Doc. No. 21]. This response asserts many of the same factual allegations and arguments

that Morgan asserted in the State Court—namely, that Houlette had abandoned Morgan as her client and that he had, therefore, been denied due process in the State Court Suit and, accordingly, that the Motion for Contempt should be denied. [*Id.*].

45.     On December 15, 2017, this Court held a hearing on the Motion for Contempt and heard testimony from two witnesses: the Receiver and Morgan. The Court then continued the hearing.

46.     On January 9, 2018, the Plaintiff filed its reply to Morgan's response to the Motion for Contempt. [Adv. Doc. No. 27]. This reply asserts that Morgan's arguments have no merit and reurges this Court to coerce Morgan to come into compliance with the Receivership Order, the Compel Order, and the Injunction Order. [*Id.*].

47.     On January 10, 2018, this Court held the continued hearing on the Motion for Contempt and heard further testimony from the Receiver; the Court also heard testimony from Houlette. At the close of this hearing, the Court abated the Motion for Contempt to give the Chapter 7 Trustee and her counsel time to take Morgan's examination pursuant to Bankruptcy Rule 2004 (as the corporate representative of the Debtor) and review documents requested of him in order to assess what actions, if any, to take on behalf of the Debtor's estate.

48.     On February 15, 2018, Morgan filed the Motion. [Adv. Doc. No. 43]. The Motion requests the same relief that Morgan requested in the Two Emergency Motions that he filed and prosecuted in the State Court in July of 2017. [*See* Finding of Fact Nos. 30, 32]. Specifically, the Motion requests that this Court set aside the Judgment, the Receivership Order, and the Compel Order. [Adv. Doc. No. 43]. Additionally, the Motion also seeks to set aside the Injunction Order (which the State Court had not yet entered at the time Morgan filed and prosecuted the Two Emergency Motions). [*Id.*].

19

49.     On May 31, 2018, the Plaintiff filed a response to the Motion.  [Adv. Doc. No. 64].

50.     On June 4, 2018, this Court held the Hearing on the Motion, and took the matter under advisement.

### III.     CREDIBILITY OF WITNESSES

At the Hearing, two witnesses were called in Morgan's case in chief: Houlette and Morgan.  The Plaintiff called one witness in its case in chief: its attorney, Wade.

The Court finds that the testimony of Wade is very credible, and the Court gives substantial weight thereto.

The Court finds the testimony of Morgan is credible in most respects.  However, in one significant area, the Court finds that his testimony is not credible.  Specifically, he has testified that the Debtor had a written commitment from the Plaintiff for a loan of $4.0 million.[10]  [Adv. Doc. No. 72, June 4, 2018, Tr. 52:21–53:21, 79:4–81:20].  Yet, Morgan has never produced this alleged written commitment.  His failure to do so casts a pall on the veracity of his testimony insisting that such a written commitment exists.  The Court simply does not believe him on this point, and finds that the Plaintiff never issued such a written commitment.  Rather, the Court finds that Morgan has given testimony that the Plaintiff issued such a commitment in order to gin up a claim against the Plaintiff so as to convince this Court to grant the Motion.  Accordingly,

---

[10] The figure of $4.0 million represents the sum of $750,000.00 plus $3.25 million.  There is no question that the Plaintiff actually lent $750,000.00 and that this loan was well documented.  [*See* Finding of Fact No. 3].  There is a huge dispute, however, as to whether the Plaintiff committed to lend more than $750,000.00.  Morgan asserts that it did; the Plaintiff asserts that it did not.  At most points in Morgan's testimony at the Hearing when referring to the total amount of money Morgan contends that the Plaintiff promised to lend and to the amount of money the Plaintiff actually lent, Morgan referenced $3.3 million as opposed to $3.25 million, and also referenced $700,000.00 as opposed to $750,000.00.  [*See* Adv. Doc. No. 72, June 4, 2018, Tr. 53:20-21, 54:20-22, 55:2-4, 76:2-4].  Throughout this Memorandum Opinion, this Court will refer to this alleged additional commitment as one totaling $3.3 million (even though, mathematically, $4.0 million minus $750,000.00 equals $3.25 million).  From observing Morgan when he was testifying in the witness box, it appears that he was simply sloppy when giving testimony about the actual amount lent by the Plaintiff and the additional amount he asserts the Plaintiff committed to lend.

while the Court gives much weight to most of Morgan's testimony, it gives no weight to his testimony about the alleged written commitment from the Plaintiff or financing of $4.0 million. It simply strains credulity to believe that the Plaintiff gave Morgan a binding financing commitment of $4.0 million without reducing such a promise to writing. Indeed, for the Plaintiff to loan $750,000.00 to the Debtor, the Plaintiff insisted upon written documentation, including the loan agreement, the promissory note, two security agreements, and the guaranty agreement. This Court does not believe the Plaintiff would provide any promise to provide $4.0 million of financing without similar documentation.

Finally, the Court finds that the testimony of Houlette is suspect, as discussed subsequently herein, and therefore does not give her testimony as much weight as Wade's testimony and Morgan's testimony—and in some instances gives her testimony no weight at all.

## IV.   CONCLUSIONS OF LAW

### A.  Jurisdiction, Venue, and Constitutional Authority to Enter a Final Order

On November 6, 2017, Morgan removed this lawsuit from the State Court pursuant to 28 U.S.C. § 1452(a) and Bankruptcy Rule 9027(a)(1) and (2). [Adv. Doc. No. 1]. He properly removed the State Court Suit to the United States District Court for the Northern District of Texas. [Adv. Doc. No. 8]. On November 28, 2017, the Plaintiff, without opposition from Morgan, filed a motion to transfer venue of the removed lawsuit to the Southern District of Texas on the grounds that the Debtor's bankruptcy was pending in this district. [Adv. Doc. No. 8]. On November 29, 2017, the United States District Court for the Northern District of Texas granted the unopposed motion and entered an order directing the Clerk of Court to transfer the lawsuit to the United States District Court for the Southern District of Texas—which the Clerk of Court proceeded thereafter to do. [Adv. Doc. No. 9].

This Court has jurisdiction over this removed lawsuit pursuant to 28 U.S.C. § 1334(b). Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the Bankruptcy Code], or arising in or related to cases under title 11." District courts may, in turn, refer these proceedings to the bankruptcy judges for that district. 28 U.S.C. § 157(a). In the Southern District of Texas, General Order 2012-6 (entitled General Order of Reference) automatically refers all eligible cases and proceedings to the bankruptcy courts. Thus, once the District Court for the Northern District of Texas transferred the removed State Court Suit to the District Court for the Southern District of Texas, the latter automatically referred this suit to this Court.

This dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) because it is a matter affecting the administration of the Debtor's Chapter 7 estate. Specifically, how the Plaintiff's claim (i.e., the Judgment) is paid will certainly affect the administration of this estate—for example, will Morgan pay it in full or, alternatively, only in part, with the Debtor's estate paying the remainder? Additionally, the dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) because it involves a claim against the Debtor's Chapter 7 estate—namely the claim that the Plaintiff has by virtue of holding the Judgment that Morgan is attempting to convince this Court to vacate. Finally, this dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O) because the resolution of this matter affects the adjustment of the debtor-creditor relationship between the Debtor and the Plaintiff.

Venue of this removed adversary proceeding is proper pursuant to 28 U.S.C. § 1409(a) because the Debtor's main Chapter 7 case is presently pending in the Southern District of Texas.

Finally, this Court has the constitutional authority to enter a final order on the Motion because at the Hearing, counsel for the Plaintiff and counsel for Morgan expressly represented in

open court on the record that, on behalf of their clients, they consent to the undersigned Article I judge entering a final order on the Motion.  [Adv. Doc. No. 72, June 4, 2018, Tr. 41:16–42:21].**11** Moreover, when Morgan first removed this dispute from the State Court, in paragraph 5 of his Notice of Removal, he expressly represented that: "To the extent that any claim or cause of action in the State Court Lawsuit is deemed to be non-core, or it is otherwise determined that the Court cannot enter final orders or judgments consistent with Article III of the United States Constitution, Fred Morgan consents to the entry of final orders or judgments by this Court." [Adv. Doc. No. 1, at 2 of 5, ¶ 5].  Because the parties have consented to the undersigned judge entering a final order on the Motion, there is no question that this Court has the constitutional authority to enter such a final order.  *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1947 (2015).

## B.  The *Rooker-Feldman* Doctrine Applies in the Dispute at Bar and, Therefore, This Court Lacks Subject Matter Jurisdiction to Adjudicate the Motion

The Plaintiff contends that this Court lacks subject matter jurisdiction to hear the Motion. Specifically, the Plaintiff argues that the *Rooker-Feldman* doctrine applies to this dispute.  This doctrine sets forth the longstanding principle that lower federal courts lack jurisdiction to entertain collateral attacks on state court judgments.  *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  Application of the *Rooker-Feldman* doctrine is limited to lawsuits "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] district court proceedings

---

11 Because the Chapter 7 Trustee is administering the estate of the Debtor, and because the Debtor is one of the Defendants in the adversary proceeding presently pending before this Court, the Court not only inquired of counsel for the Plaintiff and counsel for Morgan as to whether they consented to the undersigned judge issuing a final order on the Motion; the Court also made the same inquiry of the Trustee's counsel, even though the Trustee has taken no position—one way or the other—with respect to the Motion.  Counsel for the Trustee responded by representing that the Trustee also consents to this Court entering a final order on the Motion.  [Adv. Doc. No. 72, June 4, 2018, Tr. 42:8-13].

commenced and inviting [federal] district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Federal court authority to review a state court judgment lies exclusively with the Supreme Court of the United States. *Id.* at 292; *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986) ("Judicial errors committed in state courts are for correction in the state court systems, at the head of which stands the United States Supreme Court; such errors are no business of ours.").

Morgan contends that the *Rooker-Feldman* doctrine does not apply. In the first instance, Morgan contends that this doctrine is inapplicable to lawsuits that are removed from state court to federal court—which are the circumstances here. [*See* Finding of Fact No. 40]. Alternatively, even if the doctrine does apply to removed actions, Morgan contends that all of the conditions required by this doctrine are not present in the suit at bar. The Court now addresses these arguments in turn.

### 1. The *Rooker-Feldman* Doctrine Does Indeed Apply to Removed Actions

Morgan's contention that the *Rooker-Feldman* doctrine only applies to actions that are originally filed in federal court is off the mark. The Fifth Circuit has not issued any opinions expressly ruling on this precise issue, although the undersigned judge has found at least two Fifth Circuit opinions in which a state court suit was removed and the Fifth Circuit held that the *Rooker-Feldman* doctrine barred the district court from having subject matter jurisdiction— rulings implying that the Fifth Circuit believes that the *Rooker-Feldman* doctrine does indeed apply to removed suits. *See Morris v. Wells Fargo Bank*, 677 F. App'x 955, 957 (5th Cir. 2017) ("Consistent with our earlier decision, we hold today that the district court lacked subject matter jurisdiction over [the plaintiff]'s present suit because he is complaining of injuries caused by a state court judgment."); *Bell v. Valdez*, 207 F.3d 657, 2000 WL 122411, at *1 (5th Cir. 2000)

("The district court erred in dismissing [plaintiff]'s claims under Rule 12(b)(6), because the *Rooker-Feldman* doctrine deprives federal courts of subject matter jurisdiction over [plaintiff]'s case.").

Although the Fifth Circuit has not expressly ruled on this point, several courts outside of the Fifth Circuit have weighed in on this very issue.  In *Smith v. Stimpson*, No. 1:18-00037-CG-N, 2018 U.S. Dist. LEXIS 67940, at *8 n.12 (S.D. Ala. Apr. 20, 2018), the district court, citing several circuit court cases, expressly stated that "[t]he *Rooker-Feldman* doctrine applies to federal claims removed from state court, not just to those originally filed in federal court . . . ." Another district court has opined that "[f]urther, courts throughout the country have applied the Rooker-Feldman doctrine to cases such as this one where a plaintiff originally brought her action in state court before the defendant removed to federal court."  *Lewis v. Citibank, N.A.*, 179 F. Supp. 3d 458, 462 (E.D. Penn. 2016).  Finally, a district court from the Eastern District of Michigan has aptly disposed of the argument that Morgan is now making in this Court:

> The defendant's argument that the doctrine only applies to original federal actions is not well-taken.  The Sixth Circuit has applied the *Rooker-Feldman* doctrine in cases that have been removed from state court, albeit prior to the decision in *Exxon Mobil*.  *See Anderson v. Charter Twp. of Ypsilanti*, 266 F.3d 487, 492-93 (6th Cir. 2001).  The Sixth Circuit apparently has not had occasion to address the question of whether *Rooker-Feldman* applies to removed actions since *Exxon Mobil*.  Moreover, other circuits routinely have applied *Rooker-Feldman* to removed actions since that decision, although some courts found that the doctrine does not apply for other reasons.  *See Jones v. Commonwealth Land Title Ins. Co.*, 459 F. App'x 808, 810 (11th Cir. 2012) (finding that *Rooker-Feldman* did not apply because state court judgment was not final); *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 974 (9th Cir. 2011) (finding that *Rooker-Feldman* did not apply because there was no final state court judgment); *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1193-94 (10th Cir. 2010) (finding that *Rooker-Feldman* barred malicious prosecution claims removed from state court); *Bergquist v. Mann Bracken, LLP*, 592 F.3d 816, 818 (7th Cir. 2010) (finding that *Rooker-Feldman* applied to some removed claims).  The logic undergirding the *Rooker-Feldman* doctrine—that federal district courts lack jurisdiction to review state court judgments—applies equally in the context of removed actions.  The Court is not vested with jurisdiction to review state court judgments—if that is

> truly what the Court is being asked to do here—simply because it is the
> defendant, rather than the plaintiff, who has invoked the federal forum.  Nor does
> the language of *Exxon Mobil* compel such a result; the Supreme Court referred
> only to "cases brought by state court losers," not to "cases brought *in federal
> court* by state court losers."  The plaintiffs' case qualifies as one brought by serial
> state-court losers, satisfying that requirement.

*Baker v. Residential Funding Co., LLC*, 886 F. Supp. 2d 591, 596 (E.D. Mich. 2012) (emphasis

in original).

      This Court agrees with the *Baker* court's analysis.  It is irrelevant whether the state court

loser files a new suit in federal court or simply removes the existing state court lawsuit to federal

court.  What counts is whether the state court loser is requesting the federal court to review and

reject (i.e., to vacate or reverse) the judgment that the state court has previously entered.  *See*

*Bergquist v. Mann Bracken, LLP*, 592 F.3d 816, 818 (7th Cir. 2010) ("But if the state's court

decision causes the federal plaintiff's injury, then review is limited to the state's own appellate

judiciary, with the possibility of review by the Supreme Court once the state has made its final

decision."); *Jones v. Commonwealth Land Title Ins. Co.*, 459 F. App'x 808, 810 (11th Cir. 2012)

("The *Rooker-Feldman* doctrine provides that 'lower federal courts are precluded from

exercising appellate jurisdiction over final state-court judgments.'") (quoting *Nicholson v. Shafe*,

558 F.3d 1266, 1268 (11th Cir. 2009)).  Thus, Morgan's removal of the State Court Suit to this

Court does not bar the invocation of the *Rooker-Feldman* doctrine.  This Court now addresses

whether this doctrine, when applied to the facts here, bars this Court from exercising jurisdiction

over the Motion.

      2.   <u>In the Suit at Bar, the Conditions Exist for the *Rooker-Feldman* Doctrine to Apply</u>

      *Exxon Mobil* holds that the *Rooker-Feldman* doctrine has four elements: (1) a state court

loser; (2) alleging harm caused by a state court judgment; (3) that was rendered before the

federal court proceeding began; and (4) the federal suit requests review and reversal of the state

court judgment.  544 U.S. at 284; *see also Houston v. Queen*, 606 F. App'x 725, 730 (5th Cir. 2015).

The Fifth Circuit, among other courts, has noted that there is a split among the circuits as to whether all state court proceedings, including appeals, must have concluded before the federal suit is initiated in order for the *Rooker-Feldman* doctrine to apply.  *Houston*, 606 F. App'x at 731; *see also Storyville Dist. New Orleans, LLC v. Canal St. Dev. Corp.*, 785 F. Supp. 2d 579, 588–90 (E.D. La. 2011).  One camp is comprised of courts that have found the doctrine inapplicable unless all state proceedings, including appeals, have been resolved before the federal suit begins.  *See Storyville Dist. New Orleans, LLC*, 785 F. Supp. 2d at 588–89 (citing cases from the Eleventh, Tenth, Eighth and First circuits).  A second camp is comprised of courts that apply the doctrine as long as the federal court suit seeks a review of a previously rendered state court judgment, regardless of whether that judgment was being appealed in the state court system when the federal suit began.  *See id.* at 589 (citing several opinions from federal district courts).  The Fifth Circuit itself has acknowledged that:

> Indeed, this Court has taken inconsistent positions on the matter: In *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986), this Court applied *Rooker-Feldman* to bar a federal suit despite the pendency of an appeal in state court; but in *Rowley v. Wilson*, 200 F. App'x 274, 275 (5th Cir. 2006) (per curiam), this Court declined to apply *Rooker-Feldman* because the case was on appeal to a state appellate court, observing that "[*Exxon*] tells us when a state court judgment is sufficiently final for operation of the *Rooker-Feldman* doctrine: when 'the state proceedings [have] ended.'"

*Houston*, 606 F. App'x at 731–32.

Having acknowledged the split of authority and its own inconsistent rulings, the Fifth Circuit concluded that, at least for the time being, its position in *Hale*—that *Rooker-Feldman* could be applied despite the pendency of an appeal in state court—remains the law of this circuit:

> Although *Hale* predated *Exxon*, the split in authority following *Exxon* on the question of finality suggests that that case did not "unequivocally" overrule *Hale*. *See Technical Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 405 (5th Cir. 2012) ("[F]or a Supreme Court decision to change our Circuit's law, it 'must be more than merely illuminating with respect to the case before [the court]' and must 'unequivocally' overrule prior precedent." (second alteration in original)). Further, the portion of *Exxon* quoted in *Rowley*—an unpublished opinion with limited precedential value under 5th Circuit Rule 47.5.4—is found not in *Exxon*'s holding but in its description of the *Rooker* and *Feldman* cases, *see Exxon*, 544 U.S. at 291, 125 S. Ct. 1517. *Exxon*'s holding refers only to "state-court judgments rendered before the district court proceedings commenced." *Id.* at 284, 125 S. Ct. 1517. Accordingly, we appear to be bound by *Hale* pursuant to this Circuit's rule of orderliness.

*Id.* at 732; *see also Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 384 n.5 (5th Cir. 2017) ("In a case pre-dating *Illinois Central*, we found *Rooker-Feldman* to bar review of a state court judgment when the state court appeal was pending at the time the federal action was filed. *Hale v. Harney*, 786 F.2d 688, 689–91 (5th Cir. 1986). Contrary to *Illinois Central*'s explication of the doctrine, *Hale* suggests that a state court judgment need not be issued by a court of last resort for *Rooker-Feldman* to apply. Because of this apparent tension in our case law, we do not rely on this aspect of the doctrine to resolve the jurisdictional question before us now.").

Because the undersigned judge is bound by Fifth Circuit precedent, it will apply *Hale*, not *Rowley*, to determine whether the *Rooker-Feldman* doctrine applies to the Judgment, the Compel Order, and the Receivership Order.

The first element is satisfied here because Morgan is clearly a state court loser: there is no question that the State Court issued the Judgment against him on March 8, 2017, the Receivership Order against him on June 9, 2017, and the Compel Order against him on June 16, 2017, [Finding of Fact Nos. 17, 28]; moreover, Morgan was also a state court loser in September 2017 when the State Court issued orders denying the Two Emergency Motions, [Finding of Fact

No.37].  The second element is also satisfied because Morgan alleges in the Motion now pending

in this Court that he has been harmed by the Judgment, the Receivership Order, and the Compel

Order.  [*See* Adv. Doc. No. 43, at 5 of 12, ¶ 13].  The third element is met because the State

Court issued the Judgment approximately nine months prior to the removal of this suit—i.e., nine

months before the federal court proceeding commenced, [Finding of Fact Nos. 17, 40]; the State

Court issued the Receivership Order and Compel Order approximately seven months prior to the

removal of this suit, [Finding of Fact Nos. 28, 40]; and the State Court issued the Injunction

Order approximately six weeks prior to the removal of this suit, [Finding of Fact Nos. 37, 40].

Therefore, the Judgment, the Compel Order, the Receivership Order, and the Injunction Order

were all rendered well before proceedings began in this Court.  The fourth element is met

because Morgan requests this Court to review and set aside the Judgment, the Compel Order, and

the Receivership Order.  [Adv. Doc. No. 43, at 9–10 of 12].

Because all four elements of the *Rooker-Feldman* doctrine are satisfied, this Court finds

that it does not have the power to set aside the Judgment, the Compel Order, the Receivership

Order, and the Injunction Order.  *See Morris*, 677 F. App'x at 957 ("Reduced to its essence, the

*Rooker-Feldman* doctrine holds that inferior federal courts do not have the power to modify or

reverse state court judgments.") (quoting *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d

457, 462 (5th Cir. 2004)).  Accordingly, this Court must dismiss the Motion.

## C.  Even if the *Rooker-Feldman* Doctrine Does Not Apply, the Law of the Case Doctrine Precludes This Court From Vacating the Judgment, the Compel Order, the Receivership Order, and the Injunction Order

A Fifth Circuit opinion applying the law of the case doctrine appears to be on all fours in

the suit at bar.  In *Hardy Rawls Enterprises L.L.C. v. Cage (In re Moye)*, 437 F. App'x 338 (5th

Cir. 2011), three creditors provided inventory financing to the debtor corporation.  Two of these

creditors filed UCC liens against the inventory, but one of them, Hardy Rawls Enterprises, L.L.C., ("HRE") did not.  437 F. App'x at 339–40.  After the filing of the corporation's Chapter 7 petition, one of its creditors (who had filed a UCC lien) filed a motion to compel the trustee to turn over certificates of title, arguing that it had a first priority security interest in the debtor's inventory.  *Id.* at 340.  HRE participated in this hearing, and although conceding that the other creditor had a security interest in the vehicles, argued that it (i.e., HRE) had a superior security interest because it had provided the financing for the debtor to purchase the vehicles and had kept possession of the certificates of title.  *Id.*  The bankruptcy court issued an order holding that HRE did not have a properly perfected security interest in the vehicles.  *Id.*  HRE did not appeal this order.  *Id.*

The trustee filed an objection to HRE's proof of claim, arguing, *inter alia*, that HRE had failed to perfect its interest in the vehicles because it had not filed a UCC financing statement. *Id.*  The bankruptcy court, without holding an evidentiary hearing, issued an order sustaining the trustee's objection on the grounds that the court's previous order (resulting from the other creditor's motion to compel) had already determined the issue as to whether HRE had a perfected security interest.  *Id.* at 340–41.  HRE appealed the order sustaining the trustee's objection to its proof of claim on the grounds that the bankruptcy court had denied HRE due process by failing to conduct an evidentiary hearing.  *Id.* at 341.  The district court affirmed the bankruptcy court's ruling, and HRE appealed.  *Id.*

The Fifth Circuit affirmed the district court's order by citing to the law of the case doctrine:

> "Under the law-of-the-case doctrine, a court follows its prior final decisions in the case as the law of that case, except for a few narrow exceptions. The doctrine encompasses those decisions decided by necessary implication as well as those decided explicitly." *Pritchard v. U.S. Tr.* (*In re England* ), 153 F.3d 232, 235 (5th

Cir. 1998) (internal citations and quotation marks omitted).  This rule is "based on the salutary and sound public policy that litigation should come to an end." *Carpa, Inc. v. Ward Foods, Inc.*, 567 F.2d 1316, 1319 (5th Cir. 1978) (quoting *White v. Murtha*, 377 F.2d 428, 431 (5th Cir. 1967)).

As the bankruptcy court noted in its August order, HRE "assert[ed] that its possession of the vehicle titles both creates and perfects a superior security interest" to AFC's.  In order to decide whether HRE had a superior security interest to AFC, the bankruptcy court necessarily had to determine (1) whether HRE had a perfected security interest in the vehicle and (2) whether HRE had filed or perfected its interest before AFC.  *See* TEX. BUS & COM. CODE § 9.322 ("Conflicting perfected security interests and agricultural liens rank according to priority in time of filing or perfection.").  After a two-day hearing, the bankruptcy court answered the first question in the negative.  Having already decided that HRE did not have a perfected security interest in the vehicles, the bankruptcy court properly applied the law of the case doctrine to the Trustee's objections to HRE's proof of claim.

*Id.* at 341–42.

Application of *In re Moye* leads this Court to conclude that the law of the case doctrine governs here.  Although there was no removal of a suit in *In re Moye*—whereas, here, Morgan removed the State Court Suit to this Court—"[w]hen a case is removed from state court, the federal court takes the case in its current posture and treats previously entered orders as its own." *Nieto v. Univ. of N. M.*, No. CIV 08-0465- JB/WPL, 2010 WL 4929013, at *5 (D. N.M. Oct. 31, 2010).

Prior to the removal of the State Court Suit, the State Court held an evidentiary hearing in July of 2017, and Morgan sought the same relief then (i.e., setting aside the Judgment, the Compel Order, and the Receivership Order) that he now seeks from this Court.  [Finding of Fact Nos. 30, 32, 48].  In the rulings issued in September 2017, the State Court denied this relief.  [Finding of Fact No. 37].  Further, in September of 2017, the State Court, after reviewing the Application to Dissolve the Stay and the Defendants' response thereto, also issued the Injunction Order.  [*Id.*].  Thus, the undersigned judge treats the State Court's rulings from September of

2017 as its own rulings, and now exercises its authority to invoke the law of the case doctrine to

deny the Motion. *Barden v. Hurd Millwork Co., Inc.*, No. 06-C-46, 2006 WL 2560109, at *2

(E.D. Wis. Sept. 5, 2006) (internal citations omitted) ("Finally, in a removed case, I treat a state

court's ruling as if it had been made in federal court, and in such circumstances, the law of the

case doctrine is quite flexible, authorizing a federal court to revise a non-final decision at any

time.").**12**

Even if one views the pending adversary proceeding as a lawsuit that has been transferred

from the State Court to the undersigned judge, this Court's decision would still remain the same.

The Fifth Circuit, in an opinion involving a suit that was transferred from one court to another,

held that:

> The law of the case doctrine requires that courts not revisit the determinations of
> an earlier court unless "(i) the evidence on a subsequent trial was substantially
> different, (ii) controlling authority has since made a contrary decision of the law
> applicable to such issues, or (iii) the decision was clearly erroneous and would
> work . . . manifest injustice."

*In re Ford Motor Co.*, 591 F.3d 406, 411–12 (5th Cir. 2009) (quoting *Propes v. Quarterman*, 573

F.3d 225, 228 (5th Cir. 2009)).  Here, the evidence presented by Morgan at the Hearing was not

only **not** substantially different from the evidence presented at the hearing held in the State Court

on July 14, 2017, it was very similar.**13**  Moreover, there has been no controlling authority that

---

**12** Arguably, this Court should not have held an evidentiary hearing (i.e., the Hearing) at all, but rather should have
denied the Motion based upon the law of the case doctrine.  However, the issue as to whether the law of the case
doctrine even applied was raised for the first time during the Hearing, [Adv. Doc. No. 72, June 4, 2018, Tr. 48:5-
23]—and the issue was then briefed following the Hearing, [Adv. Doc. No. 75, at 16–17 of 18, ¶¶ 30–31; Adv. Doc.
No. 76, at 4–6 of 9, ¶¶ 9–15].

**13** A review of the transcript of the hearing held on July 14, 2017, reflects that substantive testimony was introduced
into the record (by affidavit) from both Morgan and Houlette, and that several exhibits were admitted.  [*See* Pl.'s Ex.
II].  Moreover, the State Court judge afforded Morgan's attorney the opportunity to adduce live testimony from
Morgan, but the KRCL Law Firm attorney chose not to do so.  [*See* Pl.'s Ex. II, July 14, 2017, Tr. 11:5-9].  At the
Hearing held before the undersigned judge, oral testimony was introduced into the record from both Morgan and
Houlette, and several exhibits (many of which were also introduced at the hearing held in State Court on July 14,
2017) were also introduced.  And, many of the same legal arguments that were made at the July 14, 2017, hearing
were also made at the Hearing before this Court.  This Court therefore disagrees with Morgan's statement in his

has issued a contrary decision applicable to the issues at bar since the State Court issued its

ruling in September of 2017.  And finally, the State Court's decision was not clearly erroneous

and would not work a manifest injustice on Morgan.  Indeed, at the hearing held in July of 2017

in the State Court, Morgan was represented by very capable counsel (i.e., the KRCL Law Firm),

[Finding of Fact Nos. 30, 32], so it is not as if he had an attorney representing him at that hearing

who was suffering from the alleged mental incapacities that he believes Houlette had when she

was representing him prior to his retaining the KRCL Law Firm.

       In sum, this Court concludes that the law of the case doctrine applies here, and therefore

the Motion should be denied.

**D. Even if the *Rooker-Feldman* Doctrine and the Law of the Case Doctrine are Inapplicable, Morgan Has Failed to Carry His Burden and Therefore Cannot Prevail on the Merits of the Motion**

       The Motion requests relief based upon Federal Rule of Civil Procedure 60(b)(1), (b)(4),

and/or (b)(6), all of which are made applicable to this adversary proceeding by virtue of

Bankruptcy Rule 9024.  Rule 60(b), in relevant part, reads as follows:

> On motion and just terms, the court may relieve a party . . . from a final judgment,
> order, or proceeding for the following reasons:
>     (1) mistake, inadvertence, surprise, or excusable neglect;
>     . . .
>     (4) the judgment is void;
>     . . .
>     (6) any other reason that justifies relief.

       Here, Morgan, as the party seeking relief under Rule 60(b), has the burden of showing by

a preponderance of the evidence that he is entitled to relief.  *Wooten v. McDonald Transit*

*Assocs., Inc.*, 788 F.3d 490, 501 (5th Cir. 2015); *Gueho v. Diamond M. Drilling Co.*, 524 F.2d

986, 987 (5th Cir. 1955); *Azim v. Tortoise Capital Advisers, LLC*, No. 13-2267-DDC-JPO, 2016

---

post-Hearing brief that "[t]he evidence presented to this Court is therefore 'substantially different' than that presented to Judge Gena Slaughter [i.e., the presiding State Court judge]."  [Adv. Doc. No. 76, at 5 of 9, ¶ 11].  It most certainly was not.

WL 3405126, at *7 (D. Kan. June 21, 2016) ("And the party seeking relief from a judgment under either Rule 59(e) or Rule 60(b) bears the burden to demonstrate the prerequisites for such relief.").  The nub of Morgan's position is that he was denied due process in the State Court Suit because: (a) Houlette failed to give Morgan notice of the filing of the MSJ, the hearing date for the MSJ, the filings of the Motion to Compel and the Receivership Application, and the hearing dates for the Motion to Compel and the Receivership Application; (b) Houlette failed to file responses to the MSJ, the Motion to Compel, and the Receivership Application; and (c) Houlette failed to appear at the hearings on the MSJ, the Motion to Compel, and the Receivership Application.[14]  Based upon these circumstances, Morgan contends that this Court should vacate the Judgment, the Compel Order, and the Receivership Order under Rule 60(b)(1), 60(b)(4), and/or 60(b)(6).[15]

In ruling on Morgan's request for relief under Rule 60(b), this Court is mindful of the eight factors that the Fifth Circuit has identified for consideration with respect to this Rule. Specifically, the Fifth Circuit, in *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981), and numerous opinions thereafter, has prescribed the following factors for consideration: (1) that final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether—if the judgment was a default or a dismissal in which there was no consideration of the merits—the interest in deciding cases on the merits outweighs, in the particular case, the interest

---

[14] The Court notes that Morgan asserted this same due process argument in seeking relief from the State Court at the hearing held on July 14, 2017.  [Pl.'s Ex. II, July 14, 2017, Tr. 6:8-10, 21:11-14].  In Morgan's view, he was denied due process because Houlette "abandoned" him as her client.  [*See* Adv. Doc. No. 43, at 4–8 of 12, ¶¶ 10–15, 21, 25].

[15] Although there is no precise equivalent under Texas law to Rule 60(b), Morgan sought the same relief from the State Court at the hearing held on July 14, 2017, that he now seeks from this Court under Rule 60(b).

in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether—if the judgment was rendered after a trial on the merits—the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack. *See also Walker v. Transfrontera CV de SA*, 634 F. App'x 422, 426 n.3 (5th Cir. 2015); *Diaz v. Stephens*, 731 F.3d 370, 377 (5th Cir. 2013).

In the Motion, Morgan does not specifically discuss Rule 60(b)(1), Rule 60(b)(4), or Rule 60(b)(6), but rather refers simply to Rule 60(b) and asserts that there are "extraordinary circumstances" in the suit at bar "giving rise to Rule 60(b) relief." [Adv. Doc. No. 43, at 7–8 of 12, ¶¶ 19–22].[16]  Because the key case cited in the Motion deals with a Rule 60(b)(6) motion, the Court will address this subsection first, and thereafter will address the Rule 60(b)(4) and Rule 60(b)(1) subsections.

However, before addressing the merits of Rule 60(b)(6), (b)(4), and (b)(1), this Court discusses the threshold consideration of whether Morgan filed the Motion "within a reasonable time." Aside from the fact that this particular issue is one of the factors identified by the Fifth Circuit in *Seven Elves*, Rule 60(c)(1) expressly requires that any Rule 60(b) motion "be made within a reasonable time."  If any such motion is not filed within a reasonable time, then the motion must be dismissed.  *See First RepublicBank Fort Worth v. Norglass, Inc.*, 958 F.2d 117, 121 (5th Cir. 1992) (affirming denial of Rule 60(b) motion when motion was not filed within a reasonable time).

---

[16] This specific sentence in the Motion reads as follows: "Rule of Civil Procedure 60(b) states '[o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding' for, among other reasons, 'mistake, inadvertence, surprise, or excusable neglect' (*Id.* at 60(b)(1)), 'the judgment is void' (*Id.* at 60(b)(4)) or 'any other reason that justifies relief.' (*Id.* at 60(b)(6))."  [Adv. Doc. No. 43, at 7 of 12, ¶19].

1.   <u>Morgan Failed to File the Motion Within a Reasonable Time</u>

Whether an amount of time is reasonable depends on the facts of each case, and the trial court has broad discretion to consider all circumstances when evaluating reasonableness.  *See Travelers Ins. Co. v. Liljeberg Enters.*, 38 F.3d 1404, 1410 (5th Cir. 1994); *Norglass, Inc.*, 958 F.2d at 119.  Specifically, the Fifth Circuit has noted that: "What constitutes 'reasonable time' depends on the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Travelers Ins. Co*, 38 F.3d at 1410 (quoting *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981)).  Further, "the timeliness of the [Rule 60(b)] motion is measured as of the point in time when the moving party has grounds to make such a motion, regardless of the time that has elapsed since the entry of judgment." *Norglass, Inc.*, 958 F.2d at 120.  A review of these four factors leads this Court to find that Morgan did not file the Motion within a reasonable time.

a.   *The Interest in Finality*

There is no question that setting aside the Judgment would undermine the finality of a final judgment under Texas law.  It is important to emphasize that Morgan—a sophisticated litigant who was represented at the time by counsel in the State Court Suit (i.e., Houlette), [Finding of Fact No. 8]—did not appeal the Judgment after it was issued by the State Court, [Finding of Fact No. 21], and therefore the Judgment became final and non-appealable. *See, e.g.*, *Hill v. Hill*, 460 S.W.3d 751, 760 (Tex. App.—Dallas 2015, pet. denied) (noting that because order dismissing the case was not appealed it became a final order); *Ramirez v. Archie*, No. 08-02-00265, 2004 WL 1284013, at *2 (Tex. App.—El Paso June 10, 2004, no pet.) (commenting that since plaintiffs did not appeal the judgment within a time certain, the judgment became

final).[17]   The Fifth Circuit has repeatedly stated that there is a "salutary and sound public policy

that litigation should come to an end."  *In re Moye*, 437 F. App'x at 341 (quoting *Carpa, Inc. v.*

*Ward Foods, Inc.*, 567 F.2d 1316, 1319 (5th Cir. 1978)).   For this Court to now set aside the

Judgment would be contrary to this policy.   Accordingly, this first factor weighs in favor of this

Court finding that the Motion was not filed within a reasonable time.

                     *b.   The Reason for Delay in Morgan's Filing of the Motion*

Morgan removed the State Court Suit on November 6, 2017.  [Finding of Fact No. 40].

Yet, he did not file the Motion until February 15, 2018, [Finding of Fact No. 48]—which means

he waited 101 days.   Meanwhile, after this suit was removed, the Plaintiff filed a motion for

contempt on December 7, 2017, Morgan filed a response in opposition thereto on the same day,

and this Court began a full-blown evidentiary hearing on the motion for contempt on December

15, 2017.   [Finding of Fact Nos. 41–45].   The hearing on the motion for contempt was continued

until January 10, 2018, at which time the Court heard more live testimony, and then the Court

abated this hearing to give the Chapter 7 Trustee and her counsel time to take Morgan's

examination pursuant to Bankruptcy Rule 2004 and review documents requested of him in order

to assess what actions, if any, to take on behalf of the Debtor's estate—including what actions

that the Trustee should take in this particular adversary proceeding.   [Finding of Fact No. 47].   It

was only after the Court spent substantial time holding this hearing and then abating it that

Morgan filed the Motion—and even then, he waited 33 days—until February 15, 2018—to do

so.   [Finding of Fact No. 48].   At the Hearing, Morgan gave no testimony explaining the delay in

filing the Motion, and it was his burden to do so.   *See Norglass, Inc.*, 958 F.2d at 121 ("In the

instant case, the intervenors proffered the district court no excuse for their twenty-four month

delay other than to suggest that the motion required extensive research."); *e-Watch, Inc. v.*

---

[17] *See supra* footnote 5 regarding the finality of a judgment under Texas law.

*Mobotix Corp.*, Civ. No. SA-12-CA-492-FB, 2014 WL 12493353, at *5 (W.D. Tex. Dec. 23, 2014) (burden of establishing relief under FRCP 60(b) is upon the movant). Indeed, here, the grounds for seeking relief under Rule 60(b)—to use the Fifth Circuit's words—"were known to [Morgan] all along," *Norglass, Inc.*, 958 F.2d at 120, as he knew on the date that he removed the State Court Suit to this Court that he would be seeking relief on the basis that he was denied due process due to Houlette's alleged mental incapacity during her representation of him in the State Court Suit; indeed, he knew so because he had already made this argument in State Court at the July 14, 2017, hearing on the Two Emergency Motions. Given the substantial amount of time that this Court spent on the Motion for Contempt, as well as the number of days that passed between the date of removal and the date of the filing of the Motion, the Court finds that this factor favors a finding that Morgan failed to file the Motion within a reasonable time. *See, e.g.*, *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 287–88 (5th Cir. 1985) (holding that FRCP 60's "within a reasonable time" requirement was not met when (1) the motion seeking relief under FRCP 60 was filed four months after the order of dismissal was entered; and (2) the motion seeking relief under FRCP 60 filed by plaintiff failed to offer "any legally sufficient excuse for its own lateness"); *e-Watch, Inc.*, 2014 WL 12493353, at *5–6 (denying motion for relief under FRCP 60(b) when plaintiff did not provide any reasons for its delay in filing the FRCP 60(b) motion and when FRCP 60(b) motion was filed two months after entry of judgment).

Under all of these circumstances, the Court finds that this second factor weighs in favor of this Court finding that the Motion was not filed within a reasonable time.

> c. *The Practical Ability of the Litigant (i.e., Morgan) to Learn Earlier of the Grounds Relied Upon*

Morgan's argument that this Court should accord him relief is based entirely upon his contention that Houlette, his first attorney in the State Court Suit, failed to properly represent

him due to her alleged mental incapacity.  There is no question that on the date that Morgan removed the State Court Suit (i.e., November 6, 2017), he had already learned of what he believed to be Houlette's alleged affliction.  [*See* Finding of Fact Nos. 30, 40].  Indeed, he discovered this alleged mental incapacity while the dispute with the Plaintiff was still pending in the State Court because at the hearing in State Court on July 14, 2017, he attempted to convince the State Court to set aside the Judgment based upon Houlette's alleged mental incapacity. [Finding of Fact Nos. 30, 32].  Thus, there is absolutely no question that as of the date that Morgan removed the State Court Suit, he already knew about the grounds upon which he would rely to convince a federal court to set aside the Judgment.  In the Fifth Circuit's terminology, November 6, 2017 is the date that the grounds for the Motion "materialized."  *See Clark v. Davis*, 850 F.3d 770, 781 (5th Cir. 2017).  Yet, Morgan waited 101 days to inform this Court of these grounds by filing the Motion on February 15, 2018.  [Finding of Fact No. 48].  Morgan gave no testimony at the Hearing to account for why he waited so long before filing the Motion. There is ample case law holding that waiting this period of time before filing a Rule 60(b) motion without providing a satisfactory explanation constitutes a filing that is not made within a reasonable time.  *See e.g.*, *McLawhorn v. John W. Daniel & Co., Inc.*, 924 F.2d 535, 538 (4th Cir. 1991) ("We have held on several occasions that a Rule 60(b) motion is not timely brought when it is made three to four months after the original judgment and no valid reason is given for the delay."); *Fed. Land Bank of St. Louis v. Cupples Bros.*, 889 F.2d 764, 768 (8th Cir. 1989) (affirming district court's denial of a Rule 60(b) motion as untimely where the motion was filed after a ten week delay and the movant offered no adequate explanation for the delay); *e-Watch, Inc.*, 2014 WL 12493353, at *5–6  (denying motion for relief under FRCP 60(b) when plaintiff

did not provide any reasons for its delay in filing the FRCP 60(b) motion and when FRCP 60(b) motion was filed two months after entry of judgment).

Under these circumstances, this Court finds that this factor weighs in favor of this Court finding that Morgan failed to file the Motion within a reasonable time.

### d.   The Prejudice to Other Parties

Here, there is no question that setting aside the Judgment would prejudice the Plaintiff.  It has already spent substantial time and attorneys' fees legitimately obtaining the Judgment in the State Court through the proper prosecution of the MSJ.   [*See* Finding of Fact Nos. 9–17]. Indeed, after the Plaintiff obtained the Judgment in the State Court Suit, Morgan—whose counsel could have opposed the MSJ, but failed to do so—requested the State Court to set aside the Judgment; the State Court conducted a full evidentiary hearing; the State Court took the matter under advisement; and the State Court eventually issued a ruling denying the relief requested by Morgan.  [Finding of Fact Nos. 30, 32, 37].  Thus, Morgan had a "second bite at the apple" while the dispute was still pending in State Court.[18]  He also has taken—and is still trying to take—a "third bite at the apple" by filing and prosecuting the Bill of Review in State Court. [Finding of Fact No. 34].  Now, having removed the State Court Suit, he is attempting to obtain "the fourth bite at the apple" by making the same arguments and seeking the same relief that he unsuccessfully sought in the State Court in July 2017 and is still seeking in the State Court

---

[18] In his post-Hearing brief, Morgan asserts that he was not afforded due process in the State Court on the grounds that "[t]he Dallas County district court, unlike this Court, did not have the benefit of a multi-day evidentiary hearing as to the merits of the underlying motions or to assess Ms. Houlette's credibility.  The evidence presented to this Court is therefore 'substantially different' than that presented to Judge Gena Slaughter [the presiding State Court judge]."  [Adv. Doc. No. 76, at 4–5 of 9, ¶ 11].  This Court wholeheartedly disagrees with Morgan. First, this Court did not hold a multi-day hearing on the Motion.  Rather, the Hearing was held and it did not last the entire day, but rather was held only in the afternoon on June 4, 2018.  Meanwhile, the State Court judge held her hearing in less than one day as well.  [*See* Pl.'s Ex. II, July 14, 2014 Tr.].  Moreover, as already noted *supra* in footnote 13, much of the same testimony and exhibits that were introduced into the record and many of the same arguments that were made at the Hearing were also made at the hearing held in State Court.  Hence, the evidence in this Court was not "substantially different" than that presented to the State Court judge.  In sum, Morgan did receive due process in the State Court, just as he received due process in this Court.

through his prosecution of the Bill of Review. This strategy prejudices the Plaintiff by forcing it to expend more time and money fending off the same losing arguments that Morgan asserted in the State Court in July of 2017.

Moreover, if this Court sets aside the Judgment, it will prejudice the Plaintiff because it will then have to spend time and money prosecuting another motion for summary judgment. It is no small point that Morgan has failed to introduce any credible evidence that he has a meritorious defense to the claims brought by the Plaintiff. *Smith v. Johnson*, 247 F.3d 240, 2001 WL 43520, at *2 (5th Cir. 2001) ("In the context of Rule 60(b) motions, we have stated that a movant must 'demonstrate that he possesses a meritorious cause of action,' and that his claim is extraordinary enough to warrant the district court vacating its judgment . . . .") (quoting *Pease v. Pakhoed Corp.*, 980 F.2d 995, 998 (5th Cir. 1993)). Indeed, he does not deny that the Debtor signed the promissory note and that he signed the guaranty under which the Plaintiff has prosecuted its claims. Moreover, in the State Court Suit, Morgan and the Debtor (i.e., the Defendants) simply filed a general denial, [Finding of Fact No. 7], as they had no meritorious counterclaims or affirmative defenses to lodge—at least, not at that time. Now, in this Court, Morgan has concocted claims against the Plaintiff by testifying that the Plaintiff agreed to provide an additional $3.3 million for the apartment complex in Ingleside. [Adv. Doc. No. 72, June 4, 2018, Tr. 53:10-21, 80:1-25]. Yet, Morgan has been unable to provide this Court with any documentation whatsoever about this alleged $3.3 million commitment from the Plaintiff. The Court finds that Morgan's testimony is not believable, as no sophisticated businessman such as himself (and, for that matter, no reasonable lender such as the Plaintiff) would ever enter into an oral contract for $3.3 million for the development of an apartment complex. Indeed, the loan of $750,000.00 actually provided by the Plaintiff to the Debtor was heavily documented by a 27-

page single-spaced loan agreement, a three-page single-spaced promissory note, two single-spaced security agreements totaling 18-pages, and a single-spaced guaranty totaling ten pages. [Pl.'s Ex. E, at 11–72 of 76]. This Court finds that Morgan has dreamed up this claim as litigation strategy in order to convince this Court to grant the Motion. This strategy will not work.

Under all these circumstances, there is no question that if this Court now sets aside the Judgment, the Plaintiff will be prejudiced. This fourth factor therefore weighs in favor of a finding that Morgan did not file the Motion within a reasonable time.

In sum, in analyzing all four factors that this Court is required to consider in determining whether Morgan filed the Motion within a reasonable time, the Court finds that all of them weigh heavily in favor of a finding that the Motion was not filed within a reasonable time. Accordingly, because this Court finds that the Motion was not filed within a reasonable time as required by Rule 60(c)(1), the Court finds that the Motion must be denied.

Even if this Court is incorrect and Morgan did file the Motion within a reasonable time, he is still not entitled to relief under Rule 60(b)(6), Rule 60(b)(4), or Rule 60(b)(1), as discussed below.

### 2. Morgan is Not Entitled to Relief Under Rule 60(b)(6)

In both the Motion and in closing argument at the Hearing, Morgan vigorously argued that his case is governed by *United States v. Cirami*, 563 F.2d 26 (2d Cir. 1977), a Second Circuit case in which the movants successfully invoked Rule 60(b)(6) due to their attorney's failure to properly represent them. [Adv. Doc. No. 43, at 8–9 of 12, ¶¶ 21–23; Adv. Doc. No. 72, June 4, 2018, Tr. 126:3-25]. The record in *Cirami* showed that "[the attorney's] default was not the result of his having taken on too many cases to give proper attention to this one . . . but

instead was engendered by a mental illness which manifested itself to his clients only after they had relied on him for months." 563 F.2d at 34–35. According to the Second Circuit, this attorney's mental illness constituted "extraordinary circumstances" deserving of Rule 60(b)(6) relief. In the suit at bar, Morgan contends that Houlette's failure to file responses to the MSJ, the Motion to Compel, and the Receivership Application, plus her failure to notify Morgan of these filings and to attend the hearings on these matters, was due to her "mentally incapacity" (her words) and that, therefore, he—like the movants in *Cirami*—should be accorded relief under Rule 60(b)(6). Stated differently, Morgan contends that Houlette abandoned him as her client.[19]

This Court disagrees. The testimony given by Houlette at the Hearing upon which Morgan relies is as follows:

| | |
|---|---|
| Morgan's counsel: | . . . . And I apologize for having to get personal, Ms. Houlette. During at least the spring of 2017 were you having mental issues? |
| Houlette: | I was. |
| Morgan's counsel: | Were you under a doctor's care during this time period for your mental health? |
| Houlette: | Yes, sir. |
| Morgan's counsel: | Would it be fair to say that in your opinion that you were mentally incapacitated to be able to practice law during that time frame? |
| Houlette: | Yes. |

---

[19] Morgan cites *Maples v. Thomas*, 565 U.S. 266 (2012), for the proposition that Houlette abandoned him. [Adv. Doc. No. 76, at 6 of 9, ¶ 18]. In this opinion, the Supreme Court actually uses the word "abandon": "We agree that, under agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him." 565 U.S. at 283.

| Morgan's counsel: | Should you have been practicing law during the spring of 2017 when these issues were - - |
|---|---|
| Houlette: | I shouldn't have. |
| Morgan's counsel: | Do you believe for all purposes you abandoned Mr. Morgan and FM Forrest as their attorney in defending their rights in the spring of 2017? |
| Houlette: | Yes. |

[Adv. Doc. No. 72, June 4, 2018, Tr. 105:19–106:11].[20]

This Court gives no weight to Houlette's opinion testimony that she was mentally incapacitated to the extent it impaired her ability to practice law. Houlette is a duly licensed attorney at law—not a medical doctor—and she is not competent as a matter of law to give opinion testimony that she was mentally incapacitated. *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995) ("Severe depression is not the blues. It is a mental illness; and health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it."); *Maietta v. U. Parcel Serv., Inc.*, 749 F. Supp. 1344, 1355 n.16, 1369 (D.N.J. 1990) (commenting that plaintiff is "not competent to testify as to medical determinations concerning" the cause of his elevated blood pressure and that plaintiff's allegation that his "blood pressure has recently escalated to a point that doctors cannot control it with medication" is inadmissible hearsay because plaintiff is not competent to attest to such facts); *McGee v. Dolgencorp, LLC*, No., No. 5:14-cv-90 (DCB)(MTP), 2016 WL 5936885, at *3 (S.D. Miss. Oct. 12, 2016) ("As a lay person, McGee is

---

[20] The testimony given by Houlette at the Hearing is quite similar to the statement that she made in an affidavit dated July 13, 2017, that the Defendants presented to the State Court at the hearing held on July 14, 2017, on the Two Emergency Motions. [*See* Finding of Fact Nos. 30, 32]. This affidavit is in the record before this Court because it is a part of Plaintiff's Exhibit II admitted into evidence at the Hearing. Specifically, Houlette testified in this affidavit that "I was temporarily incapacitated as a result of some mental issues that have prevented me from performing my duties as a lawyer for Mr. Morgan and FM Forrest, Inc." [Pl.'s Ex. II, at 154–55 of 161].

not qualified to testify about the medical diagnosis of his back injury or any necessary treatment thereof.  He is also not competent to testify about his own medical prognosis or treatment, or medical causation.  Such testimony must be given by a medical expert."); *Henricks v. Pickaway Corr. Inst.*, No. 2:08-CV-580, 2016 WL 4577800, at *4 (S.D. Ohio Sept. 2, 2016) ("Plaintiff, who is not a medical doctor, is not competent to offer medical opinions . . . . To be sure, Plaintiff is competent to testify about some of his symptoms and treatment and, as a lay witness, is not competent to testify about other matters relating to his diagnosis and treatment.").  Rather, Morgan needed to meet his burden of proof that Houlette was mentally incapacitated by introducing expert testimony and/or medical records about Houlette's condition—and this he did not do.  *See In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prods. Liab. Litig.*, 226 F. Supp. 3d 557, 569–70 (D.S.C. 2017) ("While the specific language used by courts vary to some degree, all jurisdictions require expert testimony at least where the issues are medically complex and outside common knowledge and lay experience"); *E.C. ex rel Crocker v. Child Dev. Schs., Inc.*, No. 3:10-CV-759-WKW, 2011 WL 4501560, at *9 (M.D. Ala. Sept. 29, 2011) (emphasis in original) ("*[E]xpert medical testimony*, and not lay testimony, is required to demonstrate proximate cause, given the complexity of E.C.'s heart condition"); *Ferris v. Pa. Fed'n Bhd. of Maint. of Way Emps.*, 153 F. Supp. 2d 736, 746 (E.D. Pa. 2001) ("[W]hereas testimony from lay witnesses may be sufficient to establish that an individual is 'distressed' in some fashion, it may not be sufficient to establish that an individual suffers from a particular medical condition such as alcoholism or depression which only professional medical care providers may be qualified to diagnose.") (quoting *Jefferson v. MilVests Sys. Tech., Inc.*, 172 F.3d 919, 1999 WL 66027, at *1 (D.C. Cir. Jan. 26, 1999)).[21]   Therefore, this Court rejects

---

[21] This Court also notes that in a quintessential bankruptcy dispute—namely, whether a debtor should receive an undue hardship discharge of student loan debt due to poor health—evidence from the debtor's physician is required

Morgan's position that he was denied due process—on the grounds that Houlette abandoned him as a client—because he has failed to prove with any credible and competent evidence that Houlette, at the time she was representing the Defendants in the State Court Suit, was suffering from mental incapacity. *See Bodnar v. Bodnar*, 441 F.2d 1103, 1104 (5th Cir. 1971) (dismissing the plaintiff's case for failing to submit to a mental examination for the purpose of determining her competency to understand the nature and effect of litigation). Stated differently, Morgan has failed to prove the "extraordinary circumstances" required to obtain Rule 60(b)(6) relief. *Wooten*, 788 F.3d at 502 ("Therefore, we hold that McDonald Transit has failed to establish 'extraordinary circumstances' justifying relief under Rule 60(b)(6) . . . .").

In making this conclusion, the Court emphasizes the Fifth Circuit's pronouncement that "[m]otions under Rule 60(b)(6) . . . require, truly 'extraordinary circumstances' precisely because there is no specification of the basis for relief. Were it otherwise, Rule 60(b)(6) could supersede the companion provisions [i.e., Rule 60(b)(1)-(5)]." *Diaz*, 731 F.3d at 376, n.1. To meet the very high threshold of "truly extraordinary circumstances," this Court finds that, at a minimum, Morgan needed to introduce evidence from a medical doctor about Houlette's alleged mental incapacity during her representation of Morgan and, additionally, exactly when she suffered from such incapacity and to what extent it impaired her ability to practice law. To grant Morgan the relief he requests under Rule 60(b)(6) by simply allowing Houlette herself to testify

---

to prove that the debtor has a medical condition justifying such a discharge. *Burton v. Educ. Credit Mgmt. Corp. (In re Burton)*, 339 B.R. 856, 874 (Bankr. E.D. Va. 2006) ("The majority rule is that substantial and credible evidence, such as corroborating evidence, must be presented for the debtor to sustain his burden of proof regarding his medical condition."); *see also Tirch v. Pa. Higher Educ. Assistance Agency (In re Tirch)*, 409 F.3d 677, 681 (6th Cir. 2005) (denying discharge of student loans when the only evidence presented at the trial court level was the debtor's testimony that she was unable to work, which was "unsupported by competent medical or psychological evidence"); *Pobiner v. Educ. Credit Mgmt. Corp. (In re Pobiner)*, 309 B.R. 405, 419 (Bankr. E.D.N.Y. 2004) ("As [the debtor] did not provide corroborating evidence from his physician or psychotherapist, this Court cannot make a finding that [the debtor] suffers from any medical condition which would impact his ability to earn a living over a significant portion of the repayment period of the student loans.").

that she was "mentally incapacitated" and therefore incapable of practicing law would make a mockery of the "truly extraordinary circumstances" standard articulated by the Fifth Circuit.[22]

This Court notes that its ruling comports with the very case upon which Morgan relies—namely, *Cirami*.  In that case, the Second Circuit held that the movant's attorney, by virtue of mental illness, had effectively abandoned the movant as his client, and that therefore relief under Rule 60(b)(6) was appropriate.  563 F.2d at 34–35.  Importantly, in reviewing the record from the district court, the Second Circuit pointedly noted that "[a]lso attached to appellants' motion was a letter from a psychologist confirming that Newman [the movants' former attorney] was being treated from October 1969 through September 1971."  *Id.* at 31.  Thus, in *Cirami*, unlike the suit at bar, the party seeking relief did in fact introduce evidence from a medical doctor to help prove that the very high threshold of "truly extraordinary circumstances" required by Rule 60(b)(6) were present.

It is also noteworthy that in a more recent opinion, *D'Angelo v. State Farm Fire & Casualty Co.*, 32 F. App'x 604 (2d Cir. 2002), the Second Circuit, in affirming a district court's decision to deny a Rule 60(b) motion based upon the alleged mental problems suffered by the movant's attorney, emphasized that the movant had failed to prove that his counsel's ineffective representation was due to the attorney's Adult Attention Deficit Hyperactivity Disorder ("ADHD").  In *D'Angelo*, the district court, like the undersigned judge, held an evidentiary hearing on the Rule 60(b) motion.  And, the movant's attorney, just like Houlette in the suit at bar, testified that he had mental problems.  Specifically, he testified "that he had been diagnosed with ADHD, that its symptoms included an inability to concentrate, and that he had probably

---

[22] The Court observes that merely because one is receiving psychiatric treatment for depression or other types of mental impairment, it does not automatically follow that the patient cannot perform the duties of her job.  *See, e.g.*, *Ramos v. Barnhart*, 119 F. App'x 295, 296 (1st Cir. 2005) ("We conclude that there is ample support in the record for the ALJ's determination that appellant's mental impairment did not significantly affect her ability to perform the full range of jobs at the relevant exertional level.").

suffered from the condition all of his life." 32 F. App'x at 605. Further, just like the record in the suit at bar, the movant introduced no **medical** evidence that substantiated the existence of the attorney's ADHD and, more importantly, did not prove that this affliction was the cause of the attorney's poor representation of the movant. "The District Court held that the alleged errors by Schlem [i.e., the movant's attorney] were strategic decisions, and that no nexus between Schlem's condition and his supposed errors had been established." *Id.* (emphasis supplied).

On appeal, the Second Circuit affirmed the district court's ruling:

We hold that the District Court correctly denied D'Angelo's latest motion. Rule 60(b)(6) is properly invoked when there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship, and when the grounds for relief are not recognized in clauses (1)-(5) of the Rule. *See Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986). The catch-all provision does not permit relief to a client whose counsel has shown gross negligence absent a showing of exceptional circumstances, such as a mental disorder, or to a party who has made deliberate tactical decisions that do not stem from such a mental disorder. An attorney's misconduct only rises to the level contemplated by Rule 60(b)(6) in cases of "constructive disappearance" or a similar inability to provide adequate representation. *See United States v. Cirami,* 563 F.2d 26 (2d Cir. 1977); *Nurani v. Marissa by GHR Industries,* 151 F.R.D. 32 (S.D.N.Y.1993). Material offered in support of a motion to vacate under Rule 60(b)(6) must be **highly convincing material**. *See Cirami,* 563 F.3d at 33.

D'Angelo failed to demonstrate a nexus between his attorney's disorder and the alleged mistakes at trial. Furthermore, [the attorney]'s conduct at no time amounted to "constructive disappearance" or to an equivalent inability to provide adequate representation.

*Id.* at 605–06 (emphasis supplied).

The Second Circuit's use of the phrase "highly convincing material" is instructive. In *Cirami*, there was "highly convincing material" because the movant introduced testimony from the attorney's psychologist about his mental problems. Conversely, in *D'Angelo*, no such medical testimony was introduced; instead, only the attorney gave testimony. The record in the suit at bar is just like the record in *D'Angelo*, and leads this Court to conclude that Morgan has

failed to introduce "highly convincing material" to establish that Houlette's poor representation of Morgan was due to her alleged mental incapacity. Stated differently, this Court equates the Second Circuit's "highly convincing material" test with the Fifth Circuit's "truly extraordinary circumstances" standard, and this Court finds that with respect to satisfying the high threshold of Rule 60(b)(6), if a movant wants to establish that he is entitled to relief due to his attorney's mental illness, then he must introduce evidence from a medical doctor that such illness existed, when it existed, and that it in fact impaired the attorney's ability to represent the movant. Here, Morgan has not introduced such evidence. Therefore, this Court finds that he has failed to prove that Houlette abandoned him as his counsel in the State Court Suit—which, in turn, means that her actions and inactions are imputed to him because she was his agent during this time period.

A relatively recent case from a district court within the Second Circuit underscores that merely introducing an affidavit from a medical doctor asserting that the attorney suffers from psychological impairment is not enough to establish the "highly convincing material" or "truly extraordinary circumstances" required for relief under Rule 60(b)(6). In *Prince of Peace Enterprises, Inc. v. Top Quality Food Market, LLC*, No. 07-CV-0349 (LAP)(FM), 2012 WL 4471267, (S.D.N.Y. Sept. 21, 2012), the plaintiff sought relief from a judgment under Rule 60(b)(6) "because [p]laintiff's former attorney allegedly suffered from psychological impairment during the course of his representation of [the plaintiff] and, as a result, failed to oppose [the defendants'] motion to dismiss." 2012 WL 4471267 at *2. The plaintiff argued that the psychological impairment constituted "exceptional circumstances under Rule 60(b)(6) that should relieve [p]laintiff from the Court's judgment entered on January 12, 2011, in favor of [the defendants]." *Id.* at *6. In support of its motion, the plaintiff introduced declarations from the attorney as well as the attorney's psychologist. *Id.*

The court was not persuaded:

> [T]he Court notes that during the alleged period of psychological impairment starting in October 2006, [the attorney] was capable of filing numerous motions as well as supporting declaration and memoranda in his capacity as [p]laintiff's attorney . . . . **Plaintiff provides no explanation as to why [the attorney's] alleged psychological impairment caused his failure to oppose [the defendants'] motion to dismiss but did not prevent him from responding to a motion brought by another defendant around the same time**.

*Id.* at *7 (emphasis supplied).

The facts in the suit at bar are similar to those in *Prince of Peace*. Here, Houlette, despite her alleged mental incapacity, timely filed the Answer on November 28, 2016, [Finding of Fact No. 7], timely and articulately communicated on January 24, 2017, with Plaintiff's counsel (Wade) about a continuance of the scheduled MSJ hearing set for February 1, 2017, [Finding of Fact Nos. 9, 10, 12], timely filed the Motion for Continuance on January 25, 2017, with an attached affidavit, [Finding of Fact Nos. 13, 14], and carried on legitimate settlement negotiations with Wade in April and May of 2017, [Finding of Fact Nos. 23–26]. Thus, Houlette, like the attorney in *Prince of Peace*, did in fact take several concerted, well-thought-out actions on behalf of her client (i.e., Morgan); and, like the movant in *Prince of Peace*, has provided no explanation as to why her alleged psychological impairment caused her failure to oppose the MSJ, the Motion to Compel, and the Receivership Application but did not prevent her from taking the above referenced actions.

Nor can Morgan meet his burden by relying upon an entirely different affidavit that Houlette gave and which is attached as Exhibit 5 to the Motion. [Adv. Doc. No. 43-5, at 2 of 18]. This affidavit is dated October 13, 2017, and contains the following sworn statements from Houlette, among other statements:

- "I now admit that due to my mental incapacity at the time I was not able to physically or mentally function as a lawyer and should have told Mr. Morgan that so that he could have obtained other counsel."

- "At least as early as November 15, 2016, I have been seeing Dr. George S. Glass, a Board Certified Psychiatrist where I was diagnosed as suffering from severe depression.  I am currently on medication to try to contain this condition."

[*Id.*]

In the first instance, the Court cannot consider this affidavit because it was not admitted into evidence at the Hearing.  Attaching an affidavit to a motion, such as Morgan's counsel did here, is wholly insufficient.  As one court has so aptly stated about an affidavit attached to a motion: "His affidavit was not proffered as evidence, was not admitted into evidence, and was not subject to objections.  It is not 'evidence.'"  *Power Survey, LLC v. Premier Util.  Servs., LLC*, No. 13-5670 (FSH) (JBC), 2015 WL 687716, at *5 (D.N.J. Feb. 18, 2015); *see also Allnut v. Comm'r of IRS*, T.C. Memo. 2004-239, 2004 Tax. Ct. Memo LEXIS 249, at *21 n.6 ("We do not consider petitioner's affidavit because it is not admitted into evidence.").

Second, even if this affidavit was admitted into evidence, this Court would give no weight to Houlette's statement that she suffered from a mental incapacity, as she is not competent to give such opinion testimony; only a qualified medical professional is competent to give such testimony.  *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prods. Liab. Litig.*, 226 F. Supp. 3d at 569–70 ("While the specific language used by courts vary to some degree, all jurisdictions require expert testimony at least where the issues are medically complex and outside common knowledge and lay experience"); *E.C. ex rel Crocker*, 2011 WL 4501560, at *9 (emphasis in original) ("*[E]xpert medical testimony*, and not lay testimony, is

required to demonstrate proximate cause, given the complexity of E.C.'s heart condition");
*Ferris*, 153 F. Supp. 2d at 746 ("[W]hereas testimony from lay witnesses may be sufficient to
establish that an individual is 'distressed' in some fashion, it may not be sufficient to establish
that an individual suffers from a particular medical condition such as alcoholism or depression
which only professional medical care providers may be qualified to diagnose.") (quoting
*Jefferson*, 172 F.3d at 919).

Further, once again assuming that this affidavit was part of the record, this Court would
give no weight to Houlette's statement that "I have been seeing Dr. George S. Glass, a Board
Certified Psychiatrist where I was diagnosed as suffering from severe depression," as it is rank
hearsay. *Liquidating Tr. for the Consol. FGH Liquidating Tr. v. S. Inspection Servs., Inc. (In re
Consol. FGH Liquidating Tr.)*, No. 01-52173 EE, 2009 WL 982889, at *7 (Bankr. S.D. Miss.
Apr. 1, 2009) ("But it is not enough that a corporate president as declarant received information
from others. That is inadmissible hearsay, not 'personal knowledge.'"); *Zywicki v. United States*,
809 F. Supp. 823, 827 n.1 (D. Kan. 1992) (noting that doctors' reports that were admitted on a
qualified basis at trial were hearsay and that the court was not considering those reports or the
testimony concerning the reports in reaching its decision). Indeed, the Plaintiff has had no
opportunity whatsoever to cross examine Dr. George S. Glass to test whether Houlette has really
been suffering from severe depression, and, if so, when she was suffering from the depression
and, further, whether such a condition would render her incapable of practicing law. Once again,
this Court emphasizes that the "truly extraordinary circumstances" threshold that Morgan must
meet required him to adduce testimony from Dr. Glass himself rather than simply adduce
testimony from Houlette about her alleged depression.

Even assuming that Houlette's affidavit testimony of October 13, 2017, was part of the record, she has made contradictory statements about her mental state that cast a definite pall on her credibility.  She—or, more accurately, Morgan—wants this Court to believe that she was mentally incapacitated to a degree that she was unable to fulfill her duties as an attorney for Morgan because she has been suffering from severe depression since November of 2016.  Yet, on January 25, 2017—during this alleged depression—after she had filed an answer on behalf of the Defendants in the State Court Suit, and after she had communicated via email with Wade about her request to continue the scheduled hearing on the MSJ, she filed a pleading entitled "Defendants' Verified Motion for Continuance of Hearing on Plaintiff's Motion for Summary Judgment."  [Finding of Fact No. 13].  In the Motion for Continuance, Houlette represented that the grounds for the requested continuance were as follows:

> Counsel for Defendants has been caring for a close friend in home hospice care for the last month or so.  He passed away last week.  She has focused much of her time and energy on caring for him over the last six weeks and needs additional time to prepare a response to Plaintiff's Motion for Summary Judgment.  In addition, Defendant Fred Morgan, who is also the sole proprietor of Defendant F M Forrest, Inc. has been battling pneumonia the last few weeks and has been unable to assist Ms. Houlette in preparing a response to the limited extent she has been available.

[Pl.'s Ex. I.]

Moreover, she attached a verification to the Motion for Continuance in which she made the following sworn representations:

> My name is Jacqueline M. Houlette.  I am over the age of eighteen (18) years, **am of sound mind and suffer from no legal disabilities.  I am fully competent to testify to the matters stated herein**. I have personal knowledge of all the facts stated in this affidavit.
>
> I am the lawyer for Defendants F M Forrest, Inc., and Fred Morgan in the above-referenced matter.
>
> I have reviewed Defendant's Verified Motion for Continuance of Hearing on Summary Judgment to which this affidavit is attached and the statements and

53

facts contained therein are within my personal knowledge and are true and correct.

[Pl.'s Ex. J] (emphasis supplied).

Thus, in order to obtain the continuance of the scheduled MSJ hearing in the State Court Suit, Houlette, on behalf of Morgan, represented under oath to the State Court on January 25, 2017, that she suffered from no legal disabilities and that the request for continuance was due to her role as a caregiver for a friend and Morgan's battling pneumonia. In reliance upon these representations, the State Court granted the Motion for Continuance. [Finding of Fact No. 15]. Now, Houlette, on behalf of Morgan, wants this Court to believe that she has all along—at least since November 15, 2016, according to her affidavit of October 13, 2017—been suffering from some mental incapacity and that she in fact was suffering from "legal disabilities."[23] Stated otherwise, Houlette is speaking out of both sides of her mouth. The Court does not find her to be a credible witness and gives no weight to her testimony.

There is more. In April and May of 2017—when Houlette would have this Court believe that she was mentally incapacitated to the extent that she could not practice law—she was in fact conducting settlement discussions with Wade by telephone and email. [Finding of Fact Nos. 23,

---

[23]  In the affidavit that Houlette signed on October 13, 2017, Houlette states under oath that a Dr. Glass diagnosed her in November of 2016 as suffering from severe depression. [Adv. Doc. No. 43-5, at 2 of 18, ¶ 3]. Although this affidavit is not part of the record from the Hearing, it was attached to the Motion and this Court reviewed it when it read the Motion. This Court will not allow Houlette to play fast and loose with the legal system by submitting one sworn representation to the State Court that as of January 25, 2017, she was of sound mind and suffering from no legal disability while submitting another sworn representation to this Court that beginning in November of 2016, she began suffering from severe depression that continued throughout 2017 during her representation of Morgan in the State Court Suit.

To the extent that Morgan contends that in 2017 Houlette was "mentally incapacitated" only intermittently—as she has suggested in her affidavit of July 13, 2017 ("I was temporarily incapacitated as a result of some mental issues . . . .")—and that therefore her affidavit testimony is not contradictory, this Court rejects such an argument. If she really was "temporarily incapacitated," then a medical doctor needed to testify at the Hearing to this effect and explain exactly when she was so incapacitated so this Court could assess whether she was afflicted during her representation of Morgan. Finally, at the Hearing, Houlette did not testify that she was **temporarily** incapacitated. Rather, she testified that she was "mentally incapacitated" "during at least the spring of 2017." [Adv. Doc. No. 72, June 4, 2018, Tr. 105:19–106:11].

24, 25, 26]. These communications were extensive; indeed, in one email, Houlette attached financial statements of two companies owned by Morgan in order to convince Wade (and his client, the Plaintiff) that Morgan had sufficient cash flow to pay off any agreed settlement amount over a period of time. [Finding of Fact Nos. 23–26]. In fact, at the Hearing, Morgan admitted under cross-examination that he had several communications with Houlette in March or April of 2017 about settlement of the State Court Suit. [Adv. Doc. No. 72, June 4, 2018, Tr. 67:6-17; 92:8-12, 94:15-17]. All of these communications not only reflect that Houlette was **not** mentally incapacitated to the extent so that she was unable to practice law, but just to the contrary: these communications underscore that she was doing what every mentally competent lawyer does when his/her clients are in litigation; namely, conduct settlement negotiations.

There is still more. At the Hearing, Houlette admitted under oath that she was trying to achieve a settlement whereby Morgan could pay the Judgment over a period of time in order to avoid having to disclose to him her failure to attend the MSJ Hearing. [Adv. Doc. No. 72, June 4, 2018, Tr. 107:10-18, 108:3-20]. This is not mental incapacity, but rather willfully wrongful conduct—otherwise known as deceit. Stated differently, contrary to what Houlette wants this Court to believe—that she was in a fog—she knew exactly what she was doing: she was intentionally keeping her client in the dark about her negligence in order to avoid being on the receiving end of a grievance and/or a malpractice suit from Morgan.

This Court's view of Houlette's testimony—both her oral testimony at the Hearing and in her written affidavit that is part of the record—is similar to the position expressed by the district court in *Vaughn v. Mobil Oil Exploration*, No. 83-0159, 1990 WL 93859 (E.D. La. June 25, 1990). In *Vaughn*, the court considered a Rule 60(b)(6) motion request from a party complaining that its attorney failed to properly represent it due to alleged "severe personal and emotional

problems." 1990 WL 93859 at *1.  The attorney for the party submitted an affidavit representing "that his total disregard and neglect was due to severe personal and emotional problems experienced over a two year period, and that he repeatedly assured [the party's president] that [the party's] legal matters were being adequately handled." *Id.* at *2.  There was no testimony from any medical doctor about the attorney's alleged problems.  The court was not enamored with this scant evidence:

> I find that the affidavits are, for the most part, self-serving and lacking in the kind of detail which make them meaningful.  For example, they reveal nothing about the kind of emotional and personal troubles [the attorney] had, and they reveal nothing about the actions taken by [the party's president] to keep himself informed about the status of various cases handled by [the attorney] on behalf of [the party].

*Id.* at *3.  Under these circumstances, the court found that the movant had not demonstrated "the extraordinary circumstances necessary for relief under Rule 60(b)(6)." *Id.* at *4.  The undersigned judge makes the same finding about the evidence introduced by Morgan at the Hearing concerning Houlette's self-proclaimed mental incompetence: it is simply unsupported by any competent medical evidence and reveals nothing about the emotional and personal troubles that Houlette had.  Houlette's testimony is self-serving and appears to be aimed at warding off a malpractice suit and a grievance filing by Morgan.[24]  This Court therefore finds that the record here is insufficient to establish "truly extraordinary circumstances" under Rule 60(b)(6).

---

[24] Morgan has pointed out that in April of 2017 and September of 2017, Houlette entered into agreed judgments of fully probated suspensions with the Texas Commission for Lawyer Discipline.  [Finding of Fact Nos. 22, 36].  These agreed judgments resulted from grievances that were filed by certain clients of Houlette other than Morgan, and Morgan contends that these grievances prove that Houlette was suffering from depression and that the depression caused her to negligently represent other clients in addition to her representation of him in the State Court Suit.  This Court agrees that these agreed judgments reflect that Houlette, at a minimum, committed negligence in her representation of these clients.  However, these agreed judgments contain no language suggesting that Houlette's negligence was caused by any mental incapacity from which she was allegedly afflicted nor do they state the time period during which Houlette committed the negligence.  [*See* Finding of Fact Nos. 22, 36].  Therefore, this Court rejects Morgan's argument that these agreed judgments prove that Houlette was mentally incapacitated and was unable to properly represent Morgan in 2017.  Indeed, these agreed judgments did <u>not</u> bar Houlette from continuing to practice law, and in fact she continued to do exactly that.  [Finding of Fact Nos. 22, 36].

In denying Morgan's request for relief under Rule 60(b)(6), this Court emphasizes that it has kept one eye constantly cocked on the Fifth Circuit's holding that:

> "[T]he mistakes of counsel, who is the legal agent of the client, are chargeable to the client . . . no matter how 'unfair' this on occasion may seem."  As we have noted in the past, "[w]ere this Court to make an exception to finality of judgment each time a hardship was visited upon the unfortunate client of a negligent or inadvertent attorney, even though the result be disproportionate to the deficiency . . . [the] meaningful finality of judgment[s] would largely disappear.'"

*James v. Rice Univ.*, 80 F. App'x 907, 911 (5th Cir. 2003) (quoting *Pryor*, 769 F.2d at 288–89); *see also Iwobi v. Merck and Co., Inc. (In re Vioxx Prods. Liab. Litig.)*, 509 F. App'x 383, 2013 WL 363499, at *3 (5th Cir. 2013) ("[Plaintiff] cannot 'avoid the consequences of the acts or omissions' of his attorney, who was 'his freely selected agent.' . . . Although such a rule may breed some unfairness, the necessity of finality demands that we abide by it.") (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962)).  In the suit at bar, Morgan was represented by Houlette, and she, by her admission, did not properly represent him.  [Adv. Doc. No. 72, June 4, 2018, Tr. 102:2–105:10; Pl.'s Ex. II, at 154 of 161, ¶ 3].  Yet, he chose her as his counsel and must live with the consequences.  *Link*, 370 U.S. at 633–34 ("There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client.  Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.  Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent . . . ."); *see also Superior Diving Co., Inc. v. Cortigene*, 372 F. App'x 496, 497 (5th Cir. 2010) ("To the extent Watts argues that due diligence should be relaxed because his lawyers were deficient, the client is responsible for choosing his lawyer and cannot claim inadequacies as an excuse for failing to meet deadlines and duties imposed by law."); *Universal Film Exchs., Inc. v. Lust*, 479

F.2d 573, 577 (4th Cir. 1973) (adopting *Link*'s rational that the neglect of a party's attorney will be imputed to the party for the purpose of a FRCP 60(b) decision).

Moreover—and this is no small point—Morgan had a "second bite at the apple" with the KRCL Law Firm in that after he replaced Houlette with this firm, it proceeded to file the Two Emergency Motions, and the State Court held a full evidentiary hearing in July of 2017. [Finding of Fact Nos. 30, 32]. The State Court then took the matters under advisement; deliberated over the issues; and then in September of 2017 ruled against Morgan by denying the Two Emergency Motions. [Finding of Fact Nos. 32, 37]. Thus, he did have his day in the State Court.[25] Indeed, he is still trying to have another day in State Court because he is prosecuting the Bill of Review, which seeks an order from the State Court to equitably set aside the Judgment.[26] [Finding of Fact No. 34].

In sum, Morgan has failed to meet his burden in proving "truly extraordinary circumstances," and therefore he cannot obtain relief under Rule 60(b)(6). The Court now turns to Morgan's assertion that even if he is not entitled to relief under Rule 60(b)(6), he is entitled to relief under Rule 60(b)(4).

### 3.   Morgan is Not Entitled to Relief Under Rule 60(b)(4)

Rule 60(b)(4) provides that a party may be relieved from a final judgment if it is determined that "the judgment is void." *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 118 (5th Cir. 2008). The Fifth Circuit has construed the phrase "the judgment is void" to mean that a

---

[25] *See supra* footnotes 13 and 18.

[26] Prior to the removal of the State Court Suit—specifically, in July of 2017—Morgan not only filed a Bill of Review in the District Court of Dallas County, Texas, but also appealed the Receivership Order to the Dallas Court of Appeals. [Finding of Fact Nos. 34, 31]. The Bill of Review is a separate lawsuit from the State Court Suit, *In re Thompson*, No. 01-17-00703-CV, 2018 WL 2106905, at *3 (Tex. App.—Houston [1st Dist.] May 8, 2018); *In re A.A.S.*, 367 S.W.3d 905, 909 (Tex. App. Houston [14th Dist.] 2012, no pet.), and there is no question that the removal of the State Court Suit did not affect Morgan's ability to prosecute the Bill of Review. However, with respect to the appeal of the Receivership Order, the removal of the State Court Suit brought that appeal to a halt.

court may set aside a judgment under Rule 60(b)(4) in one of two instances: (1) the trial court lacked personal or subject-matter jurisdiction; or (2) the trial court acted in a manner inconsistent with due process of law. *Perret v. Handshoe*, 708 F. App'x 187, 188 (5th Cir. 2018). Here, Morgan does not contend that this Court should vacate the Judgment on the grounds that the State Court lacked personal or subject-matter jurisdiction. Rather, he contends that this Court should vacate the Judgment because the State Court acted in a manner inconsistent with due process of law. Specifically, he contends that the State Court entered the Judgment, the Compel Order, and the Receivership Order despite the fact that: (1) he—due to Houlette's failure to inform him—had no knowledge of the MSJ, the Motion to Compel, the Receivership Application, or any of the hearing dates for these matters; and (2) Houlette failed to file responses to any of these pleadings and also failed to appear in court for the hearings on these matters. [Adv. Doc. No. 43]

As already discussed above with respect to the Rule 60(b)(6) arguments lodged by Morgan, he has failed to prove that Houlette, during her representation of the Defendants, was suffering from depression or some other type of mental illness that precluded her from serving as their counsel of record in the State Court Suit. Stated differently, Morgan has failed to prove that Houlette abandoned him as her client. Hence, Morgan, as the client of Houlette, is bound by Houlette's actions or inactions as well as her errors and her knowledge. *Schofield v. French*, 215 F.3d 1312, 2000 WL 712538, at *1 (1st Cir. 2000) ("[P]arties are bound by the actions of their attorneys, and '[a]ny other notion would be wholly inconsistent with our system of representative litigation.'") (quoting *Scola v. Beaulieu Wielsbeke*, 131 F.3d 1073, 1075 (1st Cir. 1997)); *Nathan A. Watson Co. v. Emp'rs Mut. Cas. Co.*, 218 S.W.3d 797, 802 (Tex. App.—Fort Worth 2007, no pet.) (imputing attorney's lack of knowledge to the client, based on principles of agency law); *In*

*re Cotant*, No. 13-34235, 2014 WL 2203942, at *5 n.39 (Bankr. D. Utah May 27, 2014) ("The law . . . imputes the knowledge of the attorney to the client precisely as it imputes the knowledge of the agent . . . to his principal.") (quoting *Chanute Prod. Credit Assoc. v. Schicke (In re Schicke)*, 290 B.R. 792, 802 n.24 (B.A.P. 10th Cir. 2003)).

Here, there is no question that Houlette received a copy of the MSJ and therefore was aware of its existence and the need to file a response to it. [Finding of Fact No. 9]. Moreover, she was aware that the Plaintiff had obtained a setting on the MSJ because she communicated by email with Wade in an effort to obtain his agreement (on behalf of the Plaintiff) to a continuance of the MSJ hearing. [Finding of Fact Nos. 10–12]. Further, when she could not obtain definitive agreement from Wade, she filed the Motion for Continuance—which was granted. [Finding of Fact Nos. 13–15]. Subsequently, she received notice of the rescheduled hearing on the MSJ, [Finding of Fact No. 16], and, after the State Court entered the Judgment, Houlette received a copy of the Judgment from the Plaintiff's counsel, Wade, [Finding of Fact No. 18]. Additionally, she received copies of the Motion to Compel and the Receivership Application, so she was aware that these pleadings had been filed and that she needed to file a response to them. [Finding of Fact No. 28]. Moreover, there is no question that she received notice of the hearings on the Motion to Compel and the Receivership Application. [Finding of Fact No. 28]. Thus, because Houlette had knowledge and notice, as a matter of law, so did Morgan. *Buck v. Estate of Buck*, 291 S.W.3d 46, 59–60 (Tex. App.—Corpus Christi–Edinburg 2009, no pet.) (finding that client received notice of hearings because "notice to an attorney, acquired during the existence of the attorney-client relationship, is imputed to the client") (quoting *Allied Res. Corp. v. Mo-Vac Serv. Co., Inc.*, 871 S.W.2d 773, 778 (Tex. App.—Corpus Christi–Edinburg 1994, writ denied)); *Nathan A. Watson Co.*, 218 S.W.3d at 802 (attorney's knowledge imputed to client); *In re*

*Cotant*, 2014 WL 2203942, at *5 n.39 (same). Accordingly, the State Court's entry of the Judgment, the Compel Order, and the Receivership Order were not entered in a manner inconsistent with due process. To the contrary: due process was accorded to Morgan because Houlette received copies of the pleadings that were filed and notices of the hearings that were scheduled. Houlette, having received copies of the pleadings and also having received notice of the time and date of the hearings on these pleadings, had the opportunity to file responses and attend the hearings to argue on behalf of Morgan. "[T]here is no violation of due process when a party in interest is given the opportunity at a meaningful time for a court hearing to litigate the question [at issue]." *Hartford Fed. Sav. & Loan Ass'n v. Tucker*, 491 A.2d 1084, 1088 (Conn. 1985), *cert. denied*, 474 U.S. 920 (1985).

There is a further separate and independent reason why this Court finds that the State Court acted in a manner completely consistent with due process. After the entry of the Judgment, the Compel Order, and the Receivership Order, the Defendants filed the Two Emergency Motions, which requested the State Court to vacate the Judgment, the Compel Order, and the Receivership Order. [Finding of Fact No. 30]. On July 14, 2017, the State Court held an evidentiary hearing on the Two Emergency Motions, and Morgan was represented at this Hearing not by Houlette, but by his new counsel, the KRCL Law Firm. [Finding of Fact No. 32]. At this hearing, the State Court afforded ample opportunity to Morgan to introduce evidence on the Two Emergency Motions and allowed his counsel to make argument. [*See* Pl's Ex. II, which is a transcript of the entire hearing held on July 14, 2017, in State Court]. Then, the State Court took the matters under advisement, deliberated over the issues, and issued a ruling in late September of 2017 denying the Two Emergency Motions. [Finding of Fact No. 32, 37]. Under these circumstances, there is no question that the State Court gave due process to Morgan.

Under all of these circumstances, this Court finds that Morgan has failed to meet his burden under Rule 60(b)(4) to prove that the State Court entered the Judgment, the Compel Order, and the Receivership Order in a manner inconsistent with due process of law.

4.  Morgan is Not Entitled to Relief Under Rule 60(b)(1)

In the Motion, although he cites Rule 60(b)(1) in one sentence, Morgan fails to inform this Court whether he believes he is entitled to relief for "mistake," "inadvertence," "surprise," or "excusable neglect."   The Motion simply argues that Houlette's alleged mental incapacity resulted in a denial of due process because she did not notify him of the pleadings filed by the Plaintiff or the hearings held in the State Court on these pleadings.   Moreover, at the Hearing, in his closing argument, Morgan's counsel stuck to this position and made no argument whatsoever as to whether the Rule 60(b)(1) relief sought by Morgan resulted from "mistake," "inadvertence," "surprise," or "excusable neglect."

The Court finds that Morgan has waived any Rule 60(b)(1) argument on the grounds that both the Motion and oral argument at the Hearing are too vague.  As one court has stated:

> Plaintiff's brief cites no law on this point.   A throw-away argument left undeveloped is waived.  *Conroy v. Leone,* 316 F. App'x 140, 144 n. 5 (3d Cir. Mar. 9, 2009) ("We find this undeveloped argument has been waived."); *Clay v. Holy Cross Hosp.,* 253 F.3d 1000, 1002 n. 1 (7th Cir. 2001) (holding that perfunctory and undeveloped arguments, and arguments unsupported by pertinent authority, are waived).

*Perez v. Astrue*, No. 2:09-1504, 2009 WL 4796738, at *4 (D.N.J. Dec. 9, 2009); *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Even if this Court is incorrect and that Morgan has not waived his request for relief under Rule 60(b)(1), this Court nevertheless finds that he has failed to meet his burden of proof to obtain relief under this Rule.  This Court has found that Morgan has failed to prove that Houlette

abandoned him as a client due to her alleged mental incapacity.  Thus, this Court affirmatively finds that she represented Morgan in the State Court Suit throughout 2017 until the KRCL Law Firm took over the representation in July of 2017.  Accordingly, her acts, or lack of action, during this time period of approximately the first six months of 2017 are imputed to Morgan. *James*, 80 F. App'x at 911.  There is little doubt that her failure to file responses to the MSJ, the Motion to Compel, and the Receivership Application, as well as her failure to notify Morgan of the Plaintiff's filing of these pleadings, and her failure to appear at the hearings on these motions, constitute gross negligence.  However, the law in the Fifth Circuit is clear that an attorney's gross negligence does not amount to excusable neglect that affords relief under Rule 60(b)(1). *See Pryor*, 769 F.2d at 287 ("While Rule 60(b)(1) allows relief for 'mistake, inadvertence . . . or excusable neglect,' these terms are not wholly open-ended.  'Gross carelessness is not enough. Ignorance of the rules is not enough, nor is ignorance of the law.'") (quoting Wright & Miller, *Federal Practice and Procedure* § 2858 at 170); *Severe v. State Farm Fire & Cas. Co.*, No. 07-6799, 2009 WL 3347301, at *2 (E.D. La. Oct. 14, 2009) ("[T]he Fifth Circuit has . . . stat[ed] that gross negligence . . . [is] not excusable neglect warranting relief under Rule 60(b)(1).").

Under all of the circumstances discussed above, this Court finds that Morgan has failed to meet his burden to establish that he is entitled to relief under Rule 60(b)(1).

## E.  The Eight Factors Under the *Seven Elves* Decision

As noted previously, in ruling on Morgan's request for relief under Rule 60(b), this Court is mindful of the eight factors that the Fifth Circuit has identified for consideration with respect to this Rule.  *See Seven Elves*, 635 F.2d at 402; *FDIC v. Castle*, 781 F.2d 1101, 1104 (5th Cir. 1986).  This Court has already addressed several of these factors above.  However, for purposes

of completeness and adherence to binding precedent, the Court now reviews these eight factors with respect to the Motion.

### 1.   The Final Judgment Should Not Be Lightly Disturbed

Here, the Judgment is a final judgment that Morgan did not appeal.  [Finding of Fact No. 21].  Granted, he is prosecuting the Bill of Review, [Finding of Fact No. 34], but this does not change the fact that under Texas law, the Judgment is a final judgment.  *See Hill*, 460 S.W.3d at 760 (noting that because order dismissing the case was not appealed it became a final order); *Ramirez*, 2004 WL 1284013, at *2 ("Since Appellees did not appeal the October 11 judgment within ten days after it was rendered, it became final on Monday, October 22, 2001.").  Moreover, it is highly relevant that the State Court held a full evidentiary hearing on July 14, 2017, to consider the Two Emergency Motions filed by Morgan.  [Finding of Fact No. 32].  These pleadings expressly sought to set aside the Judgment, the Compel Order, and the Receivership Order, and the State Court, after reviewing the evidence and hearing arguments of counsel, denied the Two Emergency Motions.   [Finding of Fact No. 37].   Under these circumstances, this Court finds that the principle that a final judgment should not be lightly disturbed is particularly compelling in this instance.  This factor therefore weighs strongly in favor of denying the Motion.

### 2.   The Rule 60(b) Motion Should Not Be Used as a Substitute for Appeal

First, as already noted above, Morgan did not appeal the Judgment in State Court.  [Finding of Fact No. 21].  Rather, he filed the Two Emergency Motions; the State Court held a full evidentiary hearing; and then the State Court denied the Two Emergency Motions.  [Finding of Fact Nos. 30, 32, 37].   After the denial of the Two Emergency Motions, the Plaintiff proceeded to file a Motion for Contempt in the State Court, and just minutes before this

contempt hearing began, Morgan removed the State Court Suit to federal court. [Finding of Fact Nos. 38, 40]. More than three months later, Morgan filed the Motion, which makes the same arguments and requests the same relief that Morgan failed to obtain from the State Court through his prosecution of the Two Emergency Motions. [Finding of Fact No. 48]. Indeed, at the Hearing, Morgan himself admitted that he is seeking the same relief. [Adv. Doc. No. 72, June 4, 2018, Tr. 24:2-4].[27] Under these circumstances, this Court finds that Morgan is indeed attempting to use the Motion as a substitute for appeal of the Judgment.

In making this conclusion, the Court notes that the Eighth Circuit has stated that:

> Some uncertainty exists concerning the time within which a 60(b) motion may be filed. It seems clear that the rule is not intended as a substitute for a timely appeal. Demers v. Brown, 1 Cir., 343 F.2d 427; Swam v. United States, 7 Cir., 327 F.2d 431; Hartman v. Lauchli, supra. Thus, to prevent Rule 60(b) from becoming a substitute for appeal, Professor Moore in 7 Moore's Federal Practice P60.22(3-4) states that a reasonable time for filing the motion [under Rule 60(b)] should not exceed the time allowed for appeal from judgment.

*Hoffman v. Celebrezze*, 405 F.2d 833, 836 (8th Cir. 1969).

Here, the Judgment was entered on March 8, 2017, and became final on April 8, 2017, [Finding of Facts Nos. 17, 21], and yet Morgan did not file the Motion until 101 days after he removed the State Court Suit, [*see* Finding of Fact Nos. 40, 48]. Under Texas law, the deadline for appealing a judgment issued by a trial court is 30 days;[28] and under federal law, the deadline

---

[27] The Court also notes that Morgan's counsel at the Hearing (Bruce Morris of the KRCL Law Firm), when asked "If I grant this motion [i.e., the Motion] then what happens in this court?," responded as follows: "I believe if you grant the motion then the final judgment and the turnover orders and the enforcement orders are reversed." [Adv. Doc. No. 72, June 4, 2018, Tr. 32:24–33:3]. This Court's review of the Two Emergency Motions and the transcript of the July 14, 2017, hearing held in the State Court (which is Plaintiff's Exhibit II) reflects that Morgan was asking for the same relief in that forum.

[28] *Lenham*, 2014 WL 259805, at *1.

for appealing a judgment issued by a bankruptcy court is 14 days,[29] and the deadline for appealing a judgment issued by a federal district court is 30 days.[30]   Hence, regardless whether one applies Texas state law or federal law to the standard articulated in *Hoffman*, Morgan's filing of the Motion was not filed within hailing distance of the deadlines imposed by state and federal law.

Under the above described circumstances, this factor heavily favors denial of the Motion.

3.   The Rule Should Be Liberally Construed to Achieve Substantial Justice

This Court finds that because Morgan has already received due process in the State Court Suit, denial of the Motion does not result in any injustice.   Indeed, granting the Motion would work an injustice on the Plaintiff, as it properly obtained the Judgment from the State Court, and then properly and effectively defeated the Two Emergency Motions prosecuted by Morgan in the State Court.   [Finding of Fact Nos. 17, 30, 32, 37].   This Court makes this finding based upon the Supreme Court's emphasis that the finality of judgments is paramount.   *See Link*, 370 U.S. at 633–34.

In sum, this Court finds that this factor weighs in favor of denial of the Motion.

4.   Whether the Motion Was Made Within a Reasonable Time

This Court has already concluded that Morgan failed to file the Motion within a reasonable time.   [*See supra* Section IV, D, 1].   This factor therefore favors denial of the Motion.

---

[29] *In re City of Harrisburg, Pa*, 462 B.R. 510, 512 (Bankr. M.D. PA 2011) ("Rule 8002 provides that a notice of appeal must be filed with the Clerk within fourteen days of the date of the entry of the judgment, order, or decree appealed from.").

[30] *Kinnell v. Fort Scott Police Dep't*, 83 F.3d 432, 1996 WL 207402, at *1 (10th Cir. 1996) ("Under Federal Rule of Appellate Procedure 4(a)(1), a party in a civil case must file its notice of appeal within thirty days 'after the date of entry of the judgment or order appealed from.'").

5. <u>Whether—if the Judgment Was a Default or a Dismissal in Which There Was No</u>
<u>Consideration of the Merits—the Interest in Deciding Cases on the Merits Outweighs,</u>
<u>in the Particular Case, the Interest in the Finality of the Judgment, and There is Merit</u>
<u>to the Movant's Claim or Defense</u>

In the first instance, this Court finds that the Judgment was not a default judgment, and therefore, this factor is inapplicable. The Court makes this finding because the Plaintiff obtained the Judgment through the filing and prosecution of the MSJ, not through the filing and prosecution of a motion for default judgment. [Finding of Fact Nos. 9, 16, 17]. Indeed, counsel for the Plaintiff served Morgan's counsel (i.e., Houlette) with a copy of the MSJ, and Houlette was well aware that the hearing on the MSJ was going to be held on March 7, 2017. [Finding of Fact Nos. 9, 16]. And, on March 7, 2017, the State Court did indeed hold the hearing on the MSJ, and thereafter entered the Judgment. [Finding of Fact No. 17].

However, Morgan suggests that this Court should treat the Judgment as if it was a default judgment on the grounds that Houlette never filed a response to the MSJ or appeared at the hearing on the MSJ to oppose the Plaintiff's request for summary judgment. [*See* Finding of Fact No. 17]. This Court disagrees. The fact that Houlette failed to file a response or appear at the MSJ hearing does not magically convert the Judgment from being one rendered on the Plaintiff's Motion for Summary Judgment into one being rendered by default. In fact, the Plaintiff never filed a motion for default judgment, and this is so because Morgan had actually filed an answer to the original petition filed by the Plaintiff. [Finding of Fact No. 7].

Assuming, however, that this Court did treat the Judgment as if it was a default judgment—therefore making this factor applicable here—this Court would find the factor favors denial of the Motion. This is so because this factor involves focusing not only on whether the Judgment is a default judgment, but also whether there is merit to Morgan's defense to the MSJ filed by the Plaintiff and to the counterclaims that Morgan asserts that he has. *Johnson*, 2001

WL 43520, at *2 ("In the context of Rule 60(b) motions, we have stated that a movant must 'demonstrate that he possesses a meritorious cause of action,' and that his claim is extraordinary enough to warrant the district court vacating its judgment, rather than having the matter reviewed through the normal appellate process.") (footnote omitted) (quoting *Pease v. Pakhoed Corp.*, 980 F.2d 995, 998 (5th Cir. 1993)).  When Morgan's counsel (i.e., Houlette) filed the Answer to the Petition, this pleading contained no affirmative defenses or counterclaims; it was simply a general denial.  [Finding of Fact No. 7].  The Plaintiff argues that the Answer proves that Morgan has no defense to the claims brought by the Plaintiff in the Petition nor has any counterclaims against the Plaintiff.  While this Court agrees that the Answer suggests that Morgan has no defenses or counterclaims, the Court is unwilling to find that, standing alone, the absence of affirmative defenses or counterclaims in the Answer definitively establishes that Morgan has no defenses or counterclaims.

However, Morgan unequivocally testified that the Plaintiff extended financing of $750,000.00 to the Debtor, [Adv. Doc. No. 72, June 4, 2018, Tr. 53:12-21, 54:19-22; Finding of Fact No. 3], and he does not deny that he signed the guaranty.  Hence, by his own testimony, this Court finds that Morgan has no defense to the claim brought by the Plaintiff that he is liable to the Plaintiff under the guaranty.

With respect to counterclaims against the Plaintiff, Morgan testified at the hearing that the Debtor had a written commitment from the Plaintiff for a $4.0 million loan, and that the Plaintiff reneged on this commitment and, instead, only advanced $700,000.00.[31]  [Adv. Doc. No. 72, June 4, 2018, Tr. 52:21–53:21, 54:19-22, 79:4–81:20].  According to Morgan, the

---

[31] As already noted *supra* in footnote 10, Morgan testified at some points that the Plaintiff advanced $700,000.00 and at other points he testified that the Plaintiff lent $750,000.00.  This Court finds that the Plaintiff loaned $750,000.00 to the Debtor.

Plaintiff's failure to lend this additional $3.3 million caused Morgan to suffer damage because he had to spend additional funds of his own to keep the Ingleside project afloat and, additionally, lost a significant portion of his interest in this project to other third parties.  [Pl.'s Ex. II, at 145–46 of 161, ¶ 3].  The Court finds that this testimony alone is insufficient to show that the Debtor, and Morgan, have meritorious counterclaims against the Plaintiff.  When counsel for the Plaintiff asked Morgan under oath whether he had ever produced a document evidencing the alleged "written commitment" that the Debtor allegedly had from the Plaintiff for a $4.0 million loan, Morgan would not answer this simple question.  [Adv. Doc. No. 72, June 4, 2018, Tr. 80:12–81:20].  The fact of the matter is that Morgan has never produced this "written commitment" despite having introduced other exhibits in both State Court (at the hearing held on July 14, 2017) and in this Court.  If, in fact, there was such a written commitment for the Plaintiff to lend $4.0 million to the Debtor, then the Debtor and Morgan might be able to establish that they have a meritorious prima facie claim against the Plaintiff for purpose of evaluating this fifth factor prescribed by *Seven Elves*.  However, the absence of this "written commitment" is conspicuous with a capital "C."  The fact that Morgan cannot produce this document leads this Court to find that no such document exists and that, therefore, Morgan has no meritorious counterclaims against the Plaintiff.[32]

---

[32] To the extent that Morgan suggests that the Plaintiff's commitment, if not in writing, was at least made orally, the Court finds that this is not a meritorious counter-claim as a matter of law.  First:

> The statute of frauds encompasses agreements that are "not to be performed within one year from the date of making the agreement."  Tex. Bus. & Com. Code Ann. § 26.01(b)(6).  When a promise or agreement, either by its terms or by the nature of the required acts, cannot be completed within one year, it falls within the statute of frauds and is unenforceable unless it is in writing and signed by the person to be charged.

*Kalmus v. Oliver*, 390 S.W.3d 586, 589 (Tex. App.—Dallas 2013, no pet.) (citations omitted).  Here, there is no way that the Debtor, who would have been the borrower of the additional $3.3 million about which Morgan testified, would have repaid this loan within one year, so the statute of frauds would have rendered this oral agreement unenforceable.

Second, aside from the statute of frauds bar, the alleged commitment about which Morgan testified would not be enforceable because:

Thus, to the extent that this factor is applicable in the suit at bar, the Court finds that it weighs against granting the Motion.

6.   <u>Whether—if the Judgment Was Rendered After a Trial on the Merits—the Movant Had a Fair Opportunity to Present His Claim or Defense</u>

In the State Court Suit, there was no trial on the merits; rather, the State Court issued the Judgment as a result of the Plaintiff filing the MSJ.  [Finding of Fact Nos. 9, 17].  Granted, Houlette did not appear for Morgan at the hearing that the State Court held on March 7, 2017, on the MSJ, nor did she file a response opposing the MSJ.  [Finding of Fact No. 17].  Hence, Morgan did not present any arguments to the State Court at that hearing.  The question now, however, is whether Morgan had a **fair** opportunity to present his case to the State Court.  For two reasons, this Court finds that he did have such an opportunity.  First, Plaintiff's counsel provided a copy of the MSJ to Morgan's counsel (i.e., Houlette) and Houlette was well aware that the hearing on the MSJ would take place on March 7, 2017.  [Finding of Fact Nos. 9, 17].  Thus, Morgan's agent—i.e., his attorney of record, Houlette—had notice of the MSJ and the hearing, and Morgan is bound by Houlette's inaction, i.e., for failure to file a response to the MSJ and to appear and argue at the hearing held on March 7, 2017.  Stated differently, because Houlette had a fair opportunity to present Morgan's case to the State Court, it follows that Morgan had a fair opportunity.

---

A contract is not legally binding unless it is definite enough in its terms so a court can understand what the promisor undertook.  *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex.1992).  Where an essential term of an agreement is open for future negotiations, there is no binding contract.  *Id.*  Each contract should be considered separately to determine its essential terms.  *Id.*  In a contract to loan money, the material terms are generally the amount to be loaned, the maturity date of the loan, the interest rate, and the repayment terms.  *Id.*

*Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 678 (Tex. App.—Houston [1st Dist.] 1996, no writ).  At the Hearing, Morgan failed to provide the specific details about the terms of the alleged additional $3.3 million commitment from the Plaintiff.  For example, he gave no testimony about the maturity date of this alleged $3.3 million loan, the interest rate on this loan, or the repayment terms.

There is a second and independent reason why this Court finds that Morgan had a fair opportunity to present his case to the State Court. On July 6 and 7, 2017, Morgan's new counsel—the KRCL Law Firm—filed the Two Emergency Motions requesting the State Court to vacate the Judgment, the Receivership Order, and the Compel Order. [Finding of Fact No. 30]. On July 14, 2017, the State Court held an evidentiary hearing on the Two Emergency Motions. [Finding of Fact No. 32]. Among the testimony that Morgan gave via affidavit at this hearing was that the Debtor and he had claims against the Plaintiff. [Pl.'s Ex. II, at 145–146 of 161]. After listening to oral arguments of counsel about the affidavit evidence and other exhibits introduced into the record, the State Court took the matter under advisement; and then, on September 27 and 29, 2017, issued orders denying the Two Emergency Motions and granting the Application to Dissolve the Stay. [Finding of Fact Nos. 32, 37]. Thus, the State Court was not persuaded by any of the arguments that Morgan made at this hearing, including the argument that he had claims against the Plaintiff.

Under all these circumstances, this Court finds that Morgan had a fair opportunity to present his claims and defenses to the State Court. This factor therefore weighs in favor of denial of the Motion.

### 7. Whether There are Intervening Equities That Would Make it Inequitable to Grant Relief

Since the State Court entered the Judgment on March 8, 2017, Morgan has forced the Plaintiff to spend substantial time and money fending off his attempts to have the Judgment set aside—first by the State Court and, then, when that effort was unsuccessful, by this Court. [Finding of Fact Nos. 30–34, 39–40, 48]. And, he only came to this Court after losing in State Court and after the State Court was about to begin a hearing on the Plaintiff's motion for contempt for failing to comply with the Receivership Order and the Compel Order. [Finding of

Fact Nos. 38, 40]. The Court finds that these circumstances would make it inequitable, at least to some extent, to now grant the Motion and to set aside the Judgment. This factor therefore weighs in favor of denial of the Motion.

       8.   <u>Any Other Factors Relevant to the Justice of the Judgment Under Attack</u>

Morgan asserts that Houlette "abandoned" him as a client due to her mental incapacity, and that these circumstances would make it inequitable if his requested relief is not granted. Yet, simply alleging that Houlette had some form of mental incapacity does not make it so. *Johnson*, 2001 WL 43520, at \*2 ("Consequently, [the Rule 60(b) movant] never demonstrated to the district court that his claim of [mental] incompetence was anything more than a bald assertion."). As already noted, Morgan has failed to prove that Houlette suffered any kind of mental incapacity during her representation of Morgan and the Debtor; and, further, Morgan has failed to prove that even if she did suffer some mental affliction, he has failed to prove that this affliction impaired her ability to represent him in the State Court Suit. And, because he has failed to prove these points, the Court finds that Houlette never abandoned Morgan as her client and that her acts, or inaction, bind Morgan, as she at all points was his duly authorized agent. *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 693 (Tex. 1986) ("The attorney-client relationship is an agency relationship. The attorney's acts and omissions within the scope of his or her employment are regarded as the client's acts; the attorney's negligence is attributed to the client."). Accordingly, there was no injustice when the State Court issued the Judgment, and there is no injustice now with this Court's denial of the Motion.

This Court also notes that Morgan is presently prosecuting the Bill of Review in State Court. [Finding of Fact No. 34]. Accordingly, he has an avenue in State Court that affords him the opportunity to set aside all of the rulings issued by the State Court in 2017. Because he has

been pursuing this avenue, in addition to removing the State Court Suit to this Court, this Court finds that there is no injustice if this Court denies the Motion.

For these reasons, this Court finds that the other factors relevant to the justice of the Judgment weigh in favor of denial of the Motion.

In sum, a review of the eight *Seven Elves* factors overwhelmingly supports a denial of the Motion.

## V.   CONCLUSION

In the first instance, this Court concludes that the *Rooker-Feldman* doctrine applies and that therefore the Court does not have the power to set aside the Judgment, the Compel Order, and the Receivership Order.  Thus, the Motion must be dismissed.  Alternatively, even if the *Rooker-Feldman* doctrine is inapplicable, this Court denies the Motion due to the law of the case doctrine.

Alternatively, even if the law of the case doctrine is inapplicable, this Court denies the Motion because Morgan failed to file the Motion within a reasonable time pursuant to Federal Rule of Civil Procedure 60(c).  Finally, even if Morgan filed the Motion within a reasonable time, this Court denies the Motion on the merits because Morgan has failed to meet his burden of establishing the necessary requirements of Rule 60(b)(1), (b)(4), and (b)(6), including the necessity of establishing that "exceptional circumstances" exist.  The Court observes that Morgan had the opportunity in both the State Court and this Court to adduce testimony from medical doctors and/or introduce medical records about Houlette's alleged mental problems and whether these mental problems caused Houlette to improperly fulfill her duties as Morgan's lawyer.  Morgan's failure to do so is fatal: he has failed to carry his burden to establish that Houlette's alleged mental incapacity resulted in her abandonment of Morgan as her client.  And,

73

because he has failed to establish such abandonment, the attorney-client relationship between Houlette and him was never terminated during 2017; her representation of Morgan only ended when the KRCL Law Firm took over the representation in July of 2017. [*See* Finding of Fact No. 30]. Because the attorney-client relationship is one of principal and agent, Houlette's actions, and inactions, are imputed to Morgan with respect to the State Court Suit. *Gavenda*, 705 S.W.2d at 693. Moreover, because of this relationship, all pleadings and notices of hearing that the Plaintiff's counsel gave to Houlette in the State Court Suit—and there is no question that all of the pleadings and notices of the hearings were given to Houlette[33]—were imputed to Morgan. Thus, contrary to Morgan's assertion, he did indeed receive due process in the State Court Suit. His contention that the Judgment, the Compel Order, the Receivership Order, and the Injunction Order are void for lack of due process is without merit.

Morgan is thus left in a position similar to the aggrieved client in *Pryor*:

Appellant on brief urges that it is unfair that he will be deprived of his day in court solely because of the mistakes and omissions of an indifferent counsel. But it has long been held, particularly in civil litigation, that the mistakes of counsel, who is the legal agent of the client, are chargeable to the client, no matter how "unfair" this on occasion may seem. This is especially true where the timeliness of postjudgment filings is concerned, in part because the rule requiring timely notice of appeal is jurisdictional, and in part because of the need that a clear, objective line of finality be drawn with reliable definiteness at some point in time. In this area, at least, appellant may not escape the deficiencies of his chosen legal counsel merely by urging that he was personally uninformed of the state of matters before the court.

Were this Court to make an exception to finality of judgment each time a hardship was visited upon the unfortunate client of a negligent or inadvertent attorney, even though the result be disproportionate to the deficiency, courts would be unable to ever adequately redraw that line again, and meaningful finality of judgment would largely disappear. Far more disproportionate penalties have been suffered for far less egregious violations of our rules of procedure. While we are sympathetic to the plight of a client prejudiced by his attorney's inadvertence or negligence, the proper recourse for the aggrieved client, as the Supreme Court noted in *Link,* is to seek malpractice damages from the attorney.

---

[33] *See* Finding of Fact Nos. 9, 16, 18, 28.

769 F.2d at 288–89 (internal citations and footnote omitted).[34]

      An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

Signed on this 18th day of July, 2018.

_____
Jeff Bohm
United States Bankruptcy Judge

---

[34] The Court notes that unlike the aggrieved party in *Pryor*, Morgan still has one avenue to pursue in addition to a malpractice suit against Houlette: he can still prosecute the Bill of Review in State Court and try to obtain an order setting aside the Judgment.